355 So.2d 453 (1978)
Stanley STURMAN, Appellant,
v.
The CITY OF GOLDEN BEACH, Richard Granata and Ronald Carlson, Appellees.
No. 76-1995.
District Court of Appeal of Florida, Third District.
February 14, 1978.
Rehearing Denied March 17, 1978.
Goldstein & Goldstein, Miami, for appellant.
Wicker, Smith, Blomqvist, Davant, McMath, Tutan & O'Hara and Richard A. Sherman, Miami, for appellees.
Before HENDRY, HUBBART and KEHOE, JJ.
PER CURIAM.
Appellant/plaintiff, Stanley Sturman, appeals from three final judgments. The first *454 judgment was rendered in favor of appellee/defendant City of Golden Beach, pursuant to a directed verdict. The second and third judgments were rendered in favor of appellee/defendants Ronald Carlson and Richard Granata, both employees (police officers) of the City of Golden Beach, pursuant to jury verdicts. The three final judgments appealed from arose out of tort litigation in which appellant sought damages from appellees for false arrest and assault and battery.
The salient facts which follow amount to a rather bizarre scenario. On November 17, 1974, Officer Granata, an employee of the City of Golden Beach, a Dade County municipality, was making his usual rounds when he observed an automobile with New York State license plates pass him in the opposite direction. Believing that the vehicle had an expired registration decal, Granata turned his police cruiser around and, with siren blaring, followed the New York automobile. The New York vehicle, driven by a Mr. Polizzi, came to a halt after a short-lived pursuit approximately one block over the Broward County line, in the City of Hallandale. Upon discovering that the vehicle did, in fact, have a current decal, the officer and driver proceeded to have a friendly chat.
At this time, appellant's wife happened to be driving by and saw fit to stop her automobile next to where Granata was standing, talking to Polizzi. Rolling down the window of her vehicle, Mrs. Sturman began yelling at the New York driver, advising him to drive away, as the Golden Beach officer was in Hallandale and had no authority to either stop or arrest him.
Mrs. Sturman continued to offer the above advice to Polizzi, suggesting that he pay no attention to the officer and instructing the officer to get out of Hallandale.
After a bit, Granata told Mrs. Sturman to move on, a request which appellant's wife ignored. Thereupon, the officer informed Mrs. Sturman that she was under arrest and ordered her to pull her vehicle over. Mrs. Sturman obeyed the command and pulled her vehicle off the highway, and, having done so, promptly jumped out of her car and ran inside a nearby building where she called her husband Stanley, appellant.
A few minutes later, Stanley and his son walked down the street and joined Mrs. Sturman and together, the three started yelling and heaping abuse upon appellee Granata. The entire Sturman family loudly advised Granata that he had no jurisdiction in Hallandale and demanded that he leave their city. The family also advised Polizzi to ignore the officer and drive away. At this point, Granata called for a back-up unit and, a few moments later, appellee Officer Carlson arrived at the scene.
Upon the arrival of Carlson, appellant Stanley directed his wife to get in her car and drive away. Accepting her husband's advice, Mrs. Sturman walked over and got into her automobile. Granata thereupon approached the vehicle and removed the key from the ignition, preventing Mrs. Sturman from leaving.
The above act of Granata infuriated appellant. In a rage, Stanley ran over to the officer and jumped upon his back in an attempt to wrestle him down. Stanley was shortly thereafter subdued by appellee Granata. Upon seeing the officer prevail over her husband in their wrestling match, Mrs. Sturman ran over and proceeded to pull on Officer Granata's hair. In what can only be described as a true, though unlawful, outward manifestation of family solidarity, the Sturman's son entered the "ring" and unsuccessfully attempted to grab Granata's service revolver.
Finally, Officer Carlson restrained Mrs. Sturman and Officer Granata got Mr. Sturman under control and escorted the latter by the arm over to one of the police vehicles. By this time, the various "performers" had an impromptu audience of condominium dwellers, who had assembled from their nearby homes to witness the show after hearing the raucous events from the street below.
While appellant was being led to the police vehicle, City of Hallandale police arrived at the scene. Officer Granata and *455 Carlson went to talk with their Hallandale counterparts and left Sturman standing alone, for a moment. Excited by the crowds and with an obvious flair for the dramatic, appellant fell to the ground, clutched his heart and announced that he was having a heart attack. Officer Carlson ran to his police cruiser, retrieved an oxygen resuscitator from within the vehicle and brought it back to the supine appellant. In an outburst of patriotic fervor, Sturman refused the aid saying, "I'm on Hallandale soil. I want a Hallandale ambulance and I want Hallandale oxygen."
Both appellee officers then went back to talking with the Hallandale police. A few seconds later appellant raised himself from the ground and announced to all that the officers were acting like the Gestapo and that they could not do this, for this was not Nazi Germany,  this was Hallandale. Having thus completed his recitation, appellant resumed his position on the ground and continued his heart attack.
Subsequently, relief arrived in the form of (1) a Dade County ambulance, (2) a Randall-Eastern ambulance, (3) a Hallandale rescue unit and (4) a Hallandale ambulance. Having previously displayed his loyalty, appellant chose a Hallandale unit in which he was rushed to a nearby hospital, examined, and released. The attack had miraculously dissipated.
The two officers arrested Stanley and his wife, charging them with assault and battery, obstructing justice, and resisting an officer without violence. Both Mr. and Mrs. Sturman were placed in the custody of City of Hallandale police officers, at the request of Hallandale authorities, with the end result being that formal charges were never filed against the couple by the Golden Beach officers, nor were they ever brought to trial on the above charges.
Appellant, on the other hand, did file suit against Officers Granata and Carlson, and the City of Golden Beach, for damages (physical and mental) alleged to have occurred when the officers assaulted and battered appellant and falsely arrested him. After extensive discovery, the case proceeded to jury trial whereupon, at the conclusion of appellant's case, the trial judge granted a motion for directed verdict in favor of the City of Golden Beach. At the conclusion of the trial, the jury returned verdicts in favor of both Carlson and Granata. Final judgments were entered upon the verdicts and this appeal ensued.
As far as the City of Golden Beach is concerned, it is our opinion that the trial judge was correct in directing a verdict in the City's favor. The case proceeded to trial against the City based upon the doctrine of respondeat superior. Pursuant to Section 901.25, Florida Statutes (1975), the Golden Beach officers had no authority to cross county lines and arrest someone in Broward County. Section 901.25 provides that:
"Municipal officer, arrest outside corporate limits in fresh pursuit.  A police officer of a municipality, when necessary to make an arrest, may make a fresh pursuit of a person from within the municipality to any point in the county in which the municipality is located when the person pursued has violated a city ordinance or committed a misdemeanor within the municipality, or the officer reasonably believes that the person has committed or is committing a felony." [Emphasis supplied.]
Sub judice, the arrest of appellant occurred in a county not in which the City of Golden Beach is located, i.e., Broward County. As such, the actions of appellees, in their official capacity as employees of the City of Golden Beach, went beyond the limits of the above statute and were ultra vires acts, relieving the city of liability. City of Coral Gables v. Giblin, 127 So.2d 914 (Fla. 3d DCA 1961); Hand v. City of North Miami, 211 So.2d 36 (Fla. 3d DCA 1968).
Dealing now with appellees Carlson and Granata, we are of the opinion that no error was committed by the trial judge in instructing the jury on "citizen's arrest." As was pointed out above, appellees had no authority to arrest appellant in their official capacity as police officers. Nevertheless, they did possess a common-law right, *456 as private individuals, to arrest any person who commits a misdemeanor in their presence when said misdemeanor amounts to a breach of the peace. 3 Fla.Jur. Arrest, § 24 (1955): Op. Att'y Gen. 072-285 (1972) and 073-59 (1973). See Marden v. State, 203 So.2d 638 (Fla. 3d DCA 1967), but compare Schachter v. State, 338 So.2d 269 (Fla. 3d DCA 1976) wherein this court ruled that a private citizen had no right to arrest a person for a traffic infraction. There is no doubt that appellant's peculiar behavior amounted to a breach of the peace entitling appellees to exercise their common law right and arrest appellant.
Accordingly, after carefully reviewing the record, all points in the briefs and arguments of counsel, the final judgments appealed from are hereby affirmed.
Any other points raised by appellant which are neither directly or impliedly discussed herein are deemed to be without merit.
Affirmed.