516 S.E.2d 283

STATE of West Virginia ex rel. the
STATE of West Virginia,
Petitioner,

v.

Honorable Arthur GUSTKE, Special Judge of the Circuit Court of Wood County, and Mikhail Braverman, Respondents.

No. 25403.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 12, 1999.

Decided May 21, 1999.

Ginny Conley, Prosecuting Attorney, Jodie M. Boylen, Assistant Prosecuting Attorney, Parkersburg, West Virginia, Attorneys for the Petitioner.

Michele Rusen, Parkersburg, West Virginia, Attorney for Respondent Mikhail Braverman.

DAVIS, Justice:

In this original proceeding in prohibition, petitioner Ginny Conley, Prosecuting Attorney for Wood County, seeks to prohibit the Honorable Arthur Gustke, Special Judge of the Circuit Court of Wood County, from enforcing an order dismissing an indictment that charged respondent Mikhail Braverman with "Driving While Under the Influence of Alcohol, Third Offense," in violation of W. Va.Code § 17C–5–2(k) (1996) (Repl.Vol.1996), and "Driving While License Revoked for

Driving While Under the Influence of Alcohol," in violation of W. Va.Code § 17B–4–3(b) (1994) (Repl.Vol.1996). Judge Gustke dismissed the indictment based upon his conclusion that Mr. Braverman was illegally arrested by an off-duty police officer who was outside of his territorial jurisdiction. Prosecutor Conley argues that Judge Gustke erred in dismissing the indictment as the off-duty officer made a proper arrest as a private citizen under the common law. We conclude that the arrest was a valid citizen's arrest. Based upon this conclusion, we grant the writ.

## I.

## FACTUAL AND PROCEDURAL HISTORY

The facts relevant to this action in prohibition were tendered to the circuit court during a hearing on pre-trial motions and are not disputed by the parties. On the morning of August 30, 1997, Tad Wigal, a Parkersburg City Police Officer, was on his way home after completing a midnight shift. He was driving a marked Parkersburg City Police cruiser and was still wearing his uniform. While traveling on Interstate 77 outside the city limits of Parkersburg, Officer Wigal observed a vehicle that was being driven erratically and was weaving from lane to lane.

Officer Wigal contacted the Wood County Sheriff's Department, a law enforcement agency with jurisdiction in the area of Interstate–77 where the observed vehicle was being driven, and inquired whether there was an officer of that department in the area who could make a traffic stop. There was no such officer in the area. Consequently, Officer Wigal advised the Sheriff's Department that, with its authorization, he could stop the vehicle until such time as a sheriff's deputy could arrive at the scene. Officer Wigal was granted authorization to make the stop. Therefore, Officer Wigal engaged the siren and lights on his cruiser and stopped the vehicle in question. He instructed the driver

to wait until a Sheriff's deputy could arrive and asked the driver for some form of identification. The driver presented a North Carolina identification card, which revealed that he was Mikhail Braverman, defendant below and respondent herein.

Shortly after Officer Wigal made the stop, Deputy Richard Rhodes of the Wood County Sheriff's Department arrived. Deputy Rhodes asked Mr. Braverman for a driver's license; but Mr. Braverman indicated that the identification card was all he had. In addition, Deputy Rhodes observed the odor of alcohol coming from the car, so he asked Mr. Braverman to step out of the vehicle. Deputy Rhodes then proceeded to conduct a series of field sobriety tests. According to Deputy Rhodes, Mr. Braverman failed each of the tests administered. Consequently, Deputy Rhodes placed Mr. Braverman under arrest for Driving Under the Influence of Alcohol. Mr. Braverman was then transported to the Sheriff's office where he was asked to take an intoxilyzer test. Braverman refused to submit to the intoxilyzer test.[1]

A subsequent investigation revealed that Mr. Braverman had previously been twice convicted of driving under the influence of alcohol. It was also learned that Mr. Braverman's license to operate an automobile had been revoked for driving under the influence. Thus, Deputy Rhodes filed charges alleging that Mr. Braverman was driving while under the influence of alcohol, third offense, in violation of W. Va.Code § 17C–5–2(k) (1996) (Repl.Vol.1996), and driving while license revoked for driving while under the influence of alcohol, in violation of W. Va.Code § 17B–4–3(b) (1994) (Repl.Vol.1996). Subsequently, a Wood County Grand Jury returned an indictment against Mr. Braverman charging him with the same two offenses.

A trial on the charges was set for September 11, 1998. Several pre-trial motions were filed on Mr. Braverman's behalf, including a motion to dismiss the indictment. The basis of the motion to dismiss was that Officer

---

1. Mr. Braverman is of Russian descent. His counsel contends that he declined to take the intoxilyzer test because he speaks only limited English and did not understand what was occurring. While this fact is apparently disputed by the parties, there is no issue before us involving Mr. Braverman's refusal to submit to the intoxilyzer. Thus, we do not concern ourselves with this seemingly disputed fact.

Wigal was outside of his territorial jurisdiction at the time he stopped Mr. Braverman. Thus, Mr. Braverman contended, the stop was illegal. In response to this motion, the State argued that the stop was legal as Officer Wigal must be viewed as a private citizen who had the common law authority to detain a person for a breach of the peace occurring in his presence. Upon hearing the arguments of the parties, Judge Gustke commented:

Here the police officer who made the initial stop, although, outside of his jurisdiction, was operating a motor vehicle with lights and sirens that are authorized only by the state. Private people are not entitled to operate vehicles with lights and sirens, that is, the blue lights and the red lights and sirens. They are not authorized to wear uniforms. So I have to concluded [sic] that there is some state action involved in this particular case. And there isn't any issue as to whether or not he had the authority to act as a deputy. I take it the state is not even contending that.

Under the circumstances, I feel that the way that the stop was conducted, it would have been a violation of the Defendant's rights, since the police officer was acting outside of the scope of his geographical jurisdiction, but using the same procedures authorized by state law to make an arrest that he would use if he were actually acting within his jurisdiction. Therefore, I don't think that he had the authority to go ahead and make the stop as he made it. I then would exclude that testimony. . . .

After the circuit court ruled that it would exclude all evidence that had been obtained after Mr. Braverman was stopped by Officer Wigal, based upon its conclusion that the detention by Officer Wigal was illegal and precluded the admission of any evidence flowing therefrom, the State moved for a continuance to seek review by this Court. In response to the State's motion, Mr. Braverman renewed his motion to dismiss the indictment based upon the State's inability to proceed. The circuit court denied the State's motion for a continuance, and granted Mr. Braverman's motion to dismiss. Thereafter, the State filed the instant petition for a writ of prohibition.[2] We granted a rule to show cause and now grant the writ.

## II.

## STANDARD FOR WRIT OF PROHIBITION

In the case *sub judice*, the State seeks to prohibit the circuit court from enforcing an order dismissing an indictment. We have previously recognized that prohibition is an appropriate method for the State to challenge the dismissal of an indictment.

---

2. The State designated its petition as one for "WRIT OF PROHIBITION AND/OR MANDAMUS." We have repeatedly reiterated the elements of mandamus stating

" '[a] writ of mandamus will not issue unless three elements coexist—(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy.' Syllabus Point 1, *State ex rel. Billy Ray C. v. Skaff*, 190 W.Va. 504, 438 S.E.2d 847 (1993); Syllabus Point 2, *State ex rel. Kucera v. City of Wheeling*, 153 W.Va. 538, 170 S.E.2d 367 (1969)." Syllabus point 2, *Staten v. Dean*, 195 W.Va. 57, 464 S.E.2d 576 (1995).

Syl. pt. 1, *Cable v. Hatfield*, 202 W.Va. 638, 505 S.E.2d 701 (1998). In support of its petition for mandamus, the State contends, without legal authority, that the circuit court had a "mandatory, non-discretionary legal duty to permit this matter to go to trial . . . ." However, we have explained that "[a] non-discretionary or ministerial duty in the context of a mandamus action is one that is so plain in point of law and so clear in matter of fact that no element of discretion is left as to the precise mode of its performance." Syl. pt. 7, *Nobles v. Duncil*, 202 W.Va. 523, 505 S.E.2d 442 (1998). Furthermore, we have held that

"[m]andamus is a proper remedy to compel tribunals and officers exercising discretionary and judicial powers to act, when they refuse so to do, in violation of their duty, *but it is never employed to prescribe in what manner they shall act, or to correct errors they have made.*" Syllabus Point 1, *State ex rel. Buxton v. O'Brien*, 97 W.Va. 343, 125 S.E. 154 (1924).

Syl. pt. 8, *Nobles*, (emphasis added). Clearly, no circuit court has a plain legal duty to permit an action to go to trial such that no element of discretion is left to the court to decide whether a dismissal may be proper. Moreover, the State does not complain that the circuit court failed to act; rather, the State argues that the court's actions were in error. Because the issues raised by the State are not appropriate for a writ of mandamus, we decline to address the State's petition in this context.

*State ex rel. Forbes v. Canady,* 197 W.Va. 37, 42, 475 S.E.2d 37, 42 (1996) ("Although the State does not have the ability to appeal the dismissal of an indictment when it is not bad or insufficient, we recognize that the State is armed with another right of appellate review in the form of prohibition."). In describing the burden placed upon the State when it seeks a writ of prohibition, we have held:

> "The State may seek a writ of prohibition in this Court in a criminal case where the trial court has exceeded or acted outside of its jurisdiction. Where the State claims that the trial court abused its legitimate powers, the State must demonstrate that the court's action was so flagrant that it was deprived of its right to prosecute the case or deprived of a valid conviction. In any event, the prohibition proceeding must offend neither the Double Jeopardy Clause nor the defendant's right to a speedy trial. Furthermore, the application for a writ of prohibition must be promptly presented." Syllabus point 5, *State v. Lewis,* 188 W.Va. 85, 422 S.E.2d 807 (1992).

Syl. pt. 2, *State ex rel. Sims v. Perry,* 204 W.Va. 625, 515 S.E.2d 582 (1999). Though not plainly expressed, we interpret the State's argument as contending that the circuit court abused its legitimate powers. Therefore, the State is charged with demonstrating "that the court's action was so flagrant that it was deprived of its right to prosecute the case or deprived of a valid conviction." *Id.* Clearly, if the court's dismissal of the indictment was in error, then the court improperly interfered with the State's right to prosecute Mr. Braverman. Moreover, we have explained that "[i]f a trial court improperly interferes with a State's right to prosecute, the court, in effect, ex-

ceeds its jurisdiction." *State ex rel. Forbes v. Canady* at 42, 475 S.E.2d at 42.

■ Because the court based its decision to dismiss the indictment on the suppression of evidence, we must necessarily consider whether or not the court's decision to suppress [3] the evidence was in error. In considering this issue, we will apply a *de novo* standard of review to the legal conclusions made by the court. *State v. Honaker,* 193 W.Va. 51, 56, 454 S.E.2d 96, 101 (1994) ("We review *de novo* legal conclusions involved in suppression determinations." (citing *State v. Farley,* 192 W.Va. 247, 452 S.E.2d 50 (1994); *State v. Stuart,* 192 W.Va. 428, 452 S.E.2d 886 (1994))). Having set forth the appropriate standards for our consideration of the issues raised in connection with this petition in prohibition, we proceed to address those substantive issues.

## III.

## DISCUSSION

The State argues that the circuit court should not have suppressed the evidence obtained after Officer Wigal stopped Mr. Braverman. Although Officer Wigal was without *official* authority to make an arrest since he was outside his geographical jurisdiction, the State asserts that he must be viewed as a private citizen who had the common law authority to detain a person for a breach of the peace that occurred in his presence. The State further contends, without authority, that the argument that a police officer does not have the rights afforded private citizens simply because the officer is clothed in a police uniform and is driving a police cruiser is contrary to the public policy of this State.[4] Additionally, the State submits that this

---

**3.** While the circuit court stated that the evidence in question would be "excluded," we note that this was actually a decision to suppress evidence as the basis for the court's decision was, in essence, the protection of Mr. Braverman's constitutional rights.

**4.** The State also submits that if Officer Wigal had refused to aid the Sheriff's Department, he could theoretically have been subject to criminal prosecution under W. Va.Code § 61–5–14 (1923) (Repl.Vol.1997) for refusal to aid an officer. This statute provides:

§ 61–5–14. Refusal of person to aid officer; penalty

If any person shall, on being required by any sheriff or other officer, refuse or neglect to assist him in the execution of his office in a criminal case, or in the preservation of the peace, or the apprehending or securing of any person for a breach of the peace, or in any case of escape or rescue, he shall be guilty of a misdemeanor, and, upon conviction, shall be confined in jail not more than six months and be fined not exceeding one hundred dollars. We decline to address this theoretical argument.

Court has accepted the theory of common law detention by a private citizen. *State v. Muegge*, 178 W.Va. 439, 442, 360 S.E.2d 216, 219 (1987), *overruled on other grounds by* Syl. pt. 4, *State v. Honaker*, 193 W.Va. 51, 454 S.E.2d 96 (1994). Finally, the State argues, in a conclusory manner, that Mr. Braverman's conduct constituted a breach of the peace which permitted any private citizen to detain him until the proper authorities arrived. *Citing* 5 Am.Jur.2d *Arrest* §§ 57, 67 and 71 (1962).

In response, Mr. Braverman first notes that this Court has not previously considered when and under what circumstances a private citizen may arrest pursuant to the common law of this State. Similarly, Mr. Braverman states that this Court has not answered the question of whether, or under what circumstances, a law enforcement officer using the power and status of his or her official position may make an arrest as a private citizen pursuant to the common law. Submitting that the common law right of a citizen to make an arrest varies among the states, as does the right of a police officer to make a citizen's arrest when using the authority of his or her official position to make the arrest (sometimes referred to as "color of office"), Braverman argues that a police officer should not be permitted to make a citizen's arrest while using the indicia of his or her official status as a police officer. *Citing Commonwealth v. Troutman*, 223 Pa.Super. 509, 302 A.2d 430 (1973). In this regard, Mr. Braverman contends that, without the police cruiser, siren, lights, etc., no stop would have been possible and there would have been no evidence against him other than the observation of how he was operating his vehicle. Furthermore, Mr. Braverman asserts that it would, in most situations, be dangerous for any private citizen to at-

tempt to stop a motorist on the interstate, or for a driver to be stopped by someone without the necessary emergency equipment. Finally, Mr. Braverman maintains that Officer Wigal simply observed a traffic offense, which does not constitute a "breach of the peace" as required for a common law citizen's arrest.

■ In the case *sub judice*, Officer Wigal effected a warrantless arrest of Mr. Braverman outside of Officer Wigal's territorial jurisdiction. Because the arrest was not made in connection with a matter that arose within the territorial boundaries of Officer Wigal's jurisdiction, and did not come within the scope of his official duties, he did not have official authority as a police officer to make the arrest. *See* W. Va.Code § 8–14–3 (1990) (Repl.Vol.1998).[5] *See generally* 5 Am.Jur.2d *Arrest* § 69 at, 718 (1995) ("A public officer appointed as a conservator of the peace for a particular county or municipality as a general rule has no official power to apprehend offenders beyond the boundaries of the county or district for which he is appointed." (footnote omitted)); 6A C.J.S. *Arrest* § 53(b), at 125 (1975) ("Ordinarily, in the absence of a statute providing otherwise, a peace officer, when acting without a warrant ... may arrest in his official capacity only within the limits of the geographical or political subdivision of the state of which he is an officer." (footnote omitted)).

■ It has often been recognized that a police officer who is without *official* authority to make an arrest may nevertheless make the arrest if the circumstances are such that a private citizen would have the right to arrest either under the common law or by virtue of statutory law. *See State v. McCullar*, 110 Ariz. 427, 428, 520 P.2d 299, 300

---

5.  W. Va.Code § 8–14–3 (1990) (Repl.Vol.1998) states in relevant part:

    The chief and any member of the police force or department of a municipality and any municipal sergeant shall have all of the powers, authority, rights and privileges *within the corporate limits of the municipality* with regard to the arrest of persons, the collection of claims, and the execution and return of any search warrant, warrant of arrest or other process, which can legally be exercised or discharged by a deputy sheriff of a county. In

order *to arrest for the violation of municipal ordinances and as to all matters arising within the corporate limits and coming within the scope of his official duties,* the powers of any chief, policeman or sergeant *shall extend anywhere within the county or counties in which the municipality is located,* and any such chief, policeman or sergeant shall have the same authority of pursuit and arrest beyond his normal jurisdiction as has a sheriff.

    (Emphasis added).

(1974) (noting that state statute permitted a private person to "make an arrest when the person has in his [or her] presence committed a felony," and concluding that law enforcement officers from another state "were authorized to make a lawful arrest as private persons if a felony was committed in their presence"); *Cervantez v. J.C. Penney Co., Inc.*, 24 Cal.3d 579, 156 Cal.Rptr. 198, 595 P.2d 975 (1979) (finding that law enforcement officer who was not acting within his official capacity could make lawful arrest for misdemeanor offense if criteria of statute permitting arrest by private citizen was met, i.e., that misdemeanor offense was committed or attempted in the citizen's presence), *superseded by statute on other grounds as stated in Melendez v. City of Los Angeles*, 63 Cal. App.4th 1, 73 Cal.Rptr.2d 469 (1998); *People v. Wolf*, 635 P.2d 213, 216 (Colo.1981) (subscribing to the rule that "a peace officer acting outside the territorial limits of his authority does not have less authority to arrest than a person who is a private citizen," but concluding that officers were not acting as private citizens); *State v. Phoenix*, 428 So.2d 262, 265 (Fla.Dist.Ct.App.1982) ("In addition to any official power to arrest, police officers also have a common law right as citizens to make so-called citizen's arrests." (citation omitted)); *People v. Niedzwiedz*, 268 Ill.App.3d 119, 122, 205 Ill.Dec. 837, 839, 644 N.E.2d 53, 55 (1994) ("A police officer can make an extraterritorial warrantless arrest in the same situation that any citizen can make an arrest."); *Dodson v. State*, 269 Ind. 380, 382, 381 N.E.2d 90, 92 (Ind.1978) ("Even if the officers were without statutory arrest powers as policemen, they retained power as citizens to make an arrest …."); *State v. O'Kelly*, 211 N.W.2d 589, 595 (Iowa 1973) (" 'An officer who seeks to make an arrest without warrant outside his territory must be treated as a private person. Of course, his action will be lawful if the circumstances are such as would authorize a private person to make the arrest.' " (citations omitted)); Syl. pt. 1, *State v. Miller*, 257 Kan. 844, 896 P.2d 1069 (1995) ("An officer who makes an arrest without a warrant outside the territorial limits of his or her jurisdiction must be treated as a private person. The officer's actions will be considered lawful if the circumstances attending would authorize a private person to make the arrest."); *State v. Washington*, 444 So.2d 320, 324 (La.Ct.App.1983) (finding that officers made legal arrest outside their territorial jurisdiction as they were in close pursuit, but noting that under Louisiana statutory law "even if the officers were acting only as private citizens when they effectuated the arrest, it was valid"); *Stevenson v. State*, 287 Md. 504, 510, 413 A.2d 1340, 1344 (Md.1980) (explaining that in circumstances where a law enforcement officer is not in fresh pursuit of an offender who has committed a crime within the officer's jurisdiction, "a peace officer who makes an arrest while in another jurisdiction does so as a private person, and may only act beyond his [or her] bailiwick to the extent that the law of the place of arrest authorizes such individuals to do so" (citations omitted)); *Commonwealth v. Harris*, 11 Mass.App.Ct. 165, 169, 415 N.E.2d 216, 220 (1981) (citing with approval "[a]n extensive line of cases from other states uphold[ing] the validity of an extraterritorial arrest made by a police officer who lacked the official authority to arrest where the place of arrest authorizes a private person to make a 'citizen's arrest' under the same circumstances" (citations omitted)); *People v. Meyer*, 424 Mich. 143, 154, 379 N.W.2d 59, 64 (1985) ("As a general rule, peace officers who make a warrantless arrest outside their territorial jurisdiction are treated as private persons, and, as such, have all the powers of arrest possessed by such private persons. In such cases, the officers' actions are lawful if private citizens would have been authorized to do the same." (citations omitted) (footnotes omitted)); *State v. Schinzing*, 342 N.W.2d 105, 109 (Minn.1983) (concluding that actions of police officer in stopping a vehicle outside of his territorial jurisdiction were lawful in that the officer's actions were "within the authority of a citizen to do in making a citizen's arrest"); *Settle v. State*, 679 S.W.2d 310, 317 (Mo.Ct.App.1984) (recognizing that when a police officer "left the territorial boundaries of Kansas City, his status transformed into that of a private citizen," and indicating that the officer could have made a valid arrest if the circumstances had been such that a private citizen could have made an arrest (citations omitted)); *Molan v.*

*State,* 614 P.2d 79, 80 (Okla.Crim.App.1980) ("This Court has held that a law enforcement officer outside his jurisdiction may make a citizen's arrest." (citation omitted)); *State v. MacDonald,* 260 N.W.2d 626, 627 (S.D.1977) ("Lacking official power however, the authorities generally hold that [a public police officer] does have the same power of arrest as that conferred on a private citizen."); *State v. Johnson,* 661 S.W.2d 854, 859 (Tenn.1983) (acknowledging that a deputy acting outside of his territorial jurisdiction may be "limited to the authority of a private person" in making an arrest); *State v. Harp,* 13 Wash.App. 239, 534 P.2d 842 (1975) (concluding that officer acting outside of his territorial jurisdiction could make an arrest as a private citizen). In accordance with these numerous authorities, we hold that a law enforcement officer acting outside of his or her territorial jurisdiction has the same authority to arrest as does a private citizen and may make an extraterritorial arrest under those circumstances in which a private citizen would be authorized to make an arrest.

Having established that a law enforcement officer who is outside of his or her territorial jurisdiction may make an arrest under circumstances which would permit a private citizen to make an arrest, we must now consider whether a private citizen would have been authorized to effectuate an arrest of Mr. Braverman under the circumstances presented in this case. When Officer Wigal observed Mr. Braverman's vehicle early on the morning of August 30, 1997, it was being driven erratically and weaving from lane to lane. Although we do not have before us direct testimony from Officer Wigal stating that he believed that the vehicle was being operated by an intoxicated driver, it is reasonable to conclude that such erratic driving is sufficient probable cause to suspect that a driver is under the influence of alcohol or other controlled substances. *Cf.* Syllabus, *Simon v. West Virginia Dep't of Motor Vehicles,* 181 W.Va. 267, 382 S.E.2d 320 (1989) ("Probable cause to make a misdemeanor arrest without a warrant exists when the facts and circumstances within the knowledge of the arresting officer are sufficient to warrant a prudent man in believing that a misdemeanor is being committed in his pres-

ence."). *See, e.g., People v. Niedzwiedz,* 268 Ill.App.3d 119, 205 Ill.Dec. 837, 644 N.E.2d 53 (1994) (finding valid citizen's arrest where a law enforcement officer who was outside of his territorial jurisdiction was alerted by a private citizen that an automobile driver had been observed driving erratically, and where the officer stopped the automobile based upon his own observation of erratic driving and made a subsequent extraterritorial arrest).

■ Pursuant to W. Va.Code § 17C–5–2(d) (1996) (Repl.Vol.1996), driving under the influence of alcohol, controlled substances or drugs is a misdemeanor offense. Therefore, the question to be answered is under what circumstances a private citizen may arrest for a misdemeanor. We have previously recognized, and now hold, that "[u]nder the common law, a private citizen is authorized to arrest another who commits a misdemeanor in his [or her] presence when that misdemeanor constitutes a breach of the peace." *State v. Muegge,* 178 W.Va. 439, 442, 360 S.E.2d 216, 219 (1987) (citing 5 Am.Jur.2d *Arrest* § 34 (1962)), *overruled on other grounds by* Syl. pt. 4, *State v. Honaker,* 193 W.Va. 51, 454 S.E.2d 96 (1994). *See generally* 5 Am.Jur.2d *Arrest* § 57, at 709 (1995) ("[U]nder the common-law rule ... arrests [by private persons] can be made only for a misdemeanor constituting a breach of the peace. But a private person's right to arrest for an affray or breach of the peace exists only while it is continuing, or immediately after it has been committed, or while there is a continuing danger of its renewal." (footnotes omitted)).

■ Because a private citizen may arrest only for a misdemeanor that constitutes a breach of the peace, we must now consider whether driving under the influence is a breach of the peace. We believe that it is. This Court long ago explained that "[t]he phrase 'breach of the peace' is generic and includes every act of violence of which tends to disturb that sense of security which every person feels necessary to his comfort and to secure [that for] which the government is instituted and maintained." *State v. Mills,* 108 W.Va. 31, 35–36, 150 S.E. 142, 144 (1929)

(citing *Marcuchi v. Norfolk & W. Ry. Co.*, 81 W.Va. 548, 94 S.E. 979 (1918)). *See also State v. Steger*, 94 W.Va. 576, 580, 119 S.E. 682, 683 (1923) (stating "[a]ctual or threatened violence is an essential element of a breach of the peace" (citations omitted)). More specifically, we have held:

> A "breach of the peace" includes all violations of the public peace, order or decorum, such as to make an affray; threaten to beat, wound, or kill another, or commit violence against the person or property; contend with angry words to the disturbance of the peace; *appear in a state of gross intoxication in a public place; recklessly flourish a loaded pistol in a public place while intoxicated; and the like.*

Syl. pt. 7, *State v. Long*, 88 W.Va. 669, 108 S.E. 279 (1921) (emphasis added). This syllabus point ends with the language "and the like." We find that driving under the influence of alcohol or other controlled substances falls within the scope of this precedent. Like flourishing a loaded pistol while intoxicated, operating an automobile while under the influence is reckless conduct that places the citizens of this State at great risk of serious physical harm or death. In apparent recognition of this inherent danger, some states have expressly recognized that driving under the influence is a breach of the peace. *See, e.g., Edwards v. State*, 462 So.2d 581, 582 (Fla.Dist.Ct.App.1985) ("We cannot think of a more apt illustration of such breach of the individual and collective peace of the people of Okeechobee County than to have a drunk driver at the wheel of a killing machine that is going all over the road and scaring oncoming drivers to death rather than killing them."); *Commonwealth v. Gorman*, 288 Mass. 294, 299, 192 N.E. 618, 620 (1934) (addressing the issue of a warrantless arrest by a police officer for the offense of driving under the influence and stating that being under the influence of intoxicating liquor "is likely to make an operator of a motor vehicle a public menace, and to induce in him such reckless conduct as may make him criminally responsible for unintended assault and even

manslaughter. . . . In our opinion, the offense involves a breach of the peace, and justifies an officer in arresting without a warrant a person whom he sees in the act of committing it." (citations omitted)); Syl. pt. 1, *City of Troy v. Cummins*, 107 Ohio App. 318, 159 N.E.2d 239 (1958) (per curiam) ("The offense of operating a motor vehicle while under the influence of intoxicating liquor is a 'breach of the peace' and comes within the provision of Section 2331.13, Revised Code, which constitutes an exception to the privilege-from-arrest statutes and excepts therefrom an arrest on Sunday for a 'breach of the peace.' "). For these reasons, we expressly hold that driving while under the influence of alcohol, a controlled substance or drugs, as prohibited by W. Va.Code § 17C–5–2(d) (1996) (Repl. Vol.1996), constitutes a breach of the peace. Consequently, it is a misdemeanor offense for which a private citizen may arrest.[6]

■ Although it may appear as though we have resolved the issue before us, there is one additional matter to be addressed. Mr. Braverman argues that Officer Wigal could not have been acting as a private citizen when he made the traffic stop because he used the indicia of his office to facilitate the stop. Mr. Braverman notes that this theory is sometimes referred to as the "color of office" doctrine. We are unpersuaded by Mr. Braverman's argument. The "under color of office" doctrine prohibits a law enforcement officer from using the indicia of his or her official position *to collect evidence that a private citizen would be unable gather*. This doctrine was discussed at length in *State v. Phoenix*, 428 So.2d 262 (Fla.Dist.Ct.App. 1982), one of the cases cited by Mr. Braverman. The *Phoenix* court explained that this

> doctrine is more accurately understood if it is viewed as a limitation on the power of police to conduct investigations and to gather evidence outside their jurisdiction.

> Pursuant to the "under color of office" doctrine, police officers acting outside their jurisdiction but not in fresh pursuit may not utilize *the power of their office* to gath-

---

6. For other cases permitting a citizen's arrest for driving under the influence, see *People v. Niedzwiedz*, 268 Ill.App.3d 119, 205 Ill.Dec. 837, 644 N.E.2d 53 (1994) (finding law enforcement offi-

cer's extraterritorial arrest for driving under the influence was a valid citizen's arrest); *Romo v. Texas*, 577 S.W.2d 251 (Tex.Crim.App.1979).

er evidence or ferret out criminal activity not otherwise observable.... The purpose of this doctrine is to prevent officers from improperly asserting official authority to gather evidence not otherwise obtainable. Thus, when officers unlawfully assert official authority, either expressly or implicitly, in order to gain access to evidence, that evidence must be suppressed....

An arrest based on evidence obtained by the unlawful assertion of official authority is likewise illegal; and any "fruits" of that arrest must be suppressed as "fruits" of the unlawful assertion of authority. Because of this result, the language of the case law indicates that the "under color of office" doctrine limits the power to arrest. But this doctrine does not prevent officers from making an otherwise valid citizen's arrest just because they happen to be in uniform or otherwise clothed with the indicia of their position when making the arrest. When officers outside their jurisdiction have sufficient grounds to make a valid citizen's arrest, the law should not require them to discard the indicia of their position before chasing and arresting a fleeing felon. Any suggestion that officers could not make a valid citizen's arrest merely because they happened to be in uniform or happened to be in a police car at the time they inadvertently witnessed a felony outside their jurisdiction would be ridiculous.

428 So.2d at 266 (citations omitted) (footnote omitted). Although *Phoenix* involved a felony, the District Court of Appeal of Florida has also concluded that a valid citizen's arrest was made by uniformed officers where the offense was a misdemeanor that amounted to a breach of the peace and was committed in their presence. *Sturman v. City of Golden Beach*, 355 So.2d 453 (Fla.Dist.Ct.

App.1978). *See also People v. Niedzwiedz*, 268 Ill.App.3d 119, 122, 205 Ill.Dec. 837, 839, 644 N.E.2d 53, 55 (1994) ("A police officer exceeds his authority to make a citizen's arrest, however, when he uses the powers of his office to gather evidence unavailable to the private citizen outside his jurisdiction." (citation omitted)); *Stevenson v. State*, 287 Md. 504, 511, 413 A.2d 1340, 1344 (Md.1980) ("[T]he phrase 'color of his office' applies not to the modus operandi of the arrest, but to whether their official authority was used to gain access to the information which led to the belief that an arrest should be made.").[7]

After stopping Mr. Braverman, Officer Wigal merely asked to see his identification and requested that he wait for the arrival of a Sheriff's deputy. No evidence regarding Mr. Braverman's sobriety, or lack thereof, was collected by Officer Wigal. It was only after Deputy Rhodes arrived that field sobriety tests were conducted. Not until Mr. Braverman was taken to the Sheriff's office was it discovered that his driver's license had been revoked due to previous convictions for driving under the influence of alcohol. Because Officer Wigal did not use the indicia of his official position as a law enforcement officer to gather evidence against Mr. Braverman, we need not decide today whether to adopt the "under color of office" doctrine, but leave that question for a more appropriate case.[8]

Because the actions of Officer Wigal constituted a valid common law citizen's arrest, the circuit court erred in suppressing all evidence flowing from Officer Wigal's stop of Mr. Braverman. As the court's decision to dismiss the indictment was based on the suppression of this evidence, it was likewise in error.

---

7. *But see Commonwealth v. Troutman*, 223 Pa.Super. 509, 511–12, 302 A.2d 430, 432 (1973) (commenting, in case where officers used flashing lights, sirens and exhibited their badges to make an extraterritorial arrest, that "[t]he police officers' behavior was that of a policeman and not that of a private citizen. Once an officer invokes the power of the township to make an arrest, he cannot preserve the legality of the arrest by labeling his behavior a citizen's arrest.").

8. While the facts and issues presented by the instant petition do not require us to consider the question of a municipality's authority to establish rules or regulations prohibiting its municipal law enforcement officers from using the indicia of their official positions outside of the boundaries of their municipal jurisdiction, we nevertheless wish to emphasize that our decisions in this case are not intended to bar, and should not be construed as barring, a municipality's ability to impose such limitations upon its officers.

## IV.

### CONCLUSION

For the foregoing reasons, we find the Circuit Court of Wood County abused its legitimate powers and deprived the State of its right to prosecute when it dismissed the indictment against Mikhail Braverman based upon its erroneous conclusion that Mr. Braverman's arrest by an off-duty police officer acting outside of his territorial jurisdiction was not a valid citizen's arrest. Consequently, we grant the State's request for writ of prohibition.

Writ granted.