**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 22-607** (McDowell County CC-27-2022-F-12)

**Angel Alberta Estep,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner Angel Alberta Estep appeals the Circuit Court of McDowell County's June 21, 2022, sentencing order for her convictions, following a jury trial, for leaving the scene of a crash resulting in death and failure to report a crash.[1] She raises various assignments of error, seeking to reverse those convictions. Upon our review, finding no substantial question of law and no prejudicial error, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21(c).

### I.     Factual and Procedural History

On Thanksgiving Day in 2020, families (including the family of B.V., a two-year-old boy) had gathered to eat and celebrate. In the commotion of the holiday festivities, B.V. wandered from his home unnoticed, entered the road along which his home sat, and was fatally struck by a silver Jeep Renegade that drove away after striking the child. McDowell County Sheriff's Deputy Dalton Martin investigated the accident and learned that petitioner's silver Jeep Renegade was likely involved.

Petitioner, who worked at a Virginia coal mine and had traveled the road on which B.V. was struck on her way to work on Thanksgiving Day, was visited by a Virginia law enforcement officer at her place of employment on the evening of the accident. That officer looked at petitioner's vehicle and reported back to West Virginia law enforcement that no damage was found. Deputy Martin then, uniformed and driving his McDowell County Sheriff's Office cruiser, traveled to petitioner's Virginia workplace and obtained her oral and written consent to examine

---

[1] Petitioner appears by counsel Stephanie A. Pfeifer, and the State appears by Attorney General Patrick Morrisey and Assistant Attorney General William E. Longwell. Initials are used where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

her vehicle. Deputy Martin viewed only the vehicle's exterior; he did not touch the vehicle. Deputy Martin observed evidence he believed suggested petitioner's involvement in the hit and run. Namely, as he testified to at a later suppression hearing, Deputy Martin observed that the "skid plate under the vehicle was like clean, like something had went—traveled under the vehicle"; "what appeared to be . . . micro-like fractures, things of that nature" on the grill; and "like a red—reddish color which looked like blood" on the rear differential area. Shortly after, Virginia law enforcement was notified and responded to assist Deputy Martin. Upon their arrival, the Virginia law enforcement officers conducted an independent examination of petitioner's vehicle and then obtained a search warrant (the "Virginia warrant"). Petitioner's vehicle was seized pursuant to that warrant, and then West Virginia law enforcement officers obtained a warrant authorizing the seizure of petitioner's vehicle from Virginia. B.V.'s DNA was found on the underside of petitioner's vehicle.

Petitioner, during questioning by law enforcement the day of and the day following the accident, denied hitting anything on her way to work or otherwise noting anything out of the ordinary about her drive to work. In a statement given to Deputy Martin approximately one week after the accident, however, she admitted that she "thought [she] felt something like [she] hit something or a pothole." She also acknowledged applying her brakes and looking in her side mirror, where she "thought [she] saw something lying in the road," but because she "believed it to be an animal due to the light color . . . and what [she] thought were spots," she "continued on" to work. Petitioner was thereafter indicted on four counts: leaving the scene of a crash resulting in death, negligent homicide, failure to give information and render aid, and failure to report a crash.

Petitioner moved to suppress all evidence collected from her vehicle, arguing that her vehicle was searched without a warrant in Virginia by a West Virginia officer. In denying her motion, the circuit court found that petitioner's vehicle was searched in Virginia pursuant to a valid Virginia warrant. Regarding Deputy Martin's conduct, the court found that he was "acting under color of law" and, ultimately, "acting as a private citizen when the search was conducted on [petitioner's] vehicle," but because Virginia law enforcement officers conducted their own view of petitioner's vehicle and Deputy Martin made no "request to any judge or magistrate" in Virginia, the Virginia warrant issued "at the request of Virginia law enforcement."[2]

Petitioner's trial began on May 18, 2022. David Dawson, whose family's home neighbored that of B.V.'s family, testified that he was eating Thanksgiving dinner while looking out a window facing the road when he saw "a car come through and it hit something." He described the sound of the impact as "loud," like a "[twelve]-gauge shotgun being fired." Mr. Dawson's wife, Kelsey Hopkins, heard, but did not see, the accident. She, too, testified that it "sounded like a shotgun go off," and she heard her husband exclaim, "Oh, my God. A kid just got hit." Ms. Hopkins saw the vehicle involved in the accident slow down and its brake lights illuminate, but the driver did not stop. The two ran from the home. Mr. Dawson testified that he found B.V. "in the middle of the

---

[2] The court suppressed the written consent form signed by petitioner, finding that Deputy Martin could not legally obtain that consent outside of his territorial jurisdiction. But the court reasoned that Deputy Martin could look at the vehicle without consent because it was "in a semi-public place," it was "open for outside viewing," and the officer did not get into or touch the vehicle.

2

road," and Ms. Hopkins similarly testified that B.V. was "[p]retty much on the yellow line." At the same time that Mr. Dawson and Ms. Hopkins found the child, B.V.'s family found him and began administering CPR, to no avail.

Petitioner testified that she did not see the child in front of her car or in the road and that she did not know that she had struck a person. She testified that she heard something over the music playing in her vehicle, so she slowed and looked in her driver's side mirror. She further testified that she saw something in the road but "thought it was a puppy," remarking that "[t]here are things laying in the road all the time," so she did not stop. Explaining the discrepancy between her early statements to law enforcement recollecting nothing out of the ordinary on her drive to work and her later recollection of having hit something, petitioner testified that she had worked many hours and that the memory "just came into [her] mind" after her first statements. Although the memory came to her before she gave her later statement to the police, she waited to report it because she had an appointment with the officers and "knew [she] had to go over there . . . anyway."[3]

After the parties rested, the parties and court conferred regarding jury instructions. Petitioner objected to the court's proposed instruction on leaving the scene of a crash resulting in death because the wording "ma[d]e it look like she had to report if she hit an animal," whereas "the case law was clear that you have to know you hit a human or a person, but it says you don't have to know for sure that there was injury; so you have to know or should have known there was an injury."[4] The court revised the instruction to petitioner's satisfaction, and she stated that she had no objections to the instructions as revised.

In its closing, of relevance to the issues on appeal, the State argued that to be convicted of leaving the scene of a crash resulting in death, "[y]ou don't have to show actual knowledge."

---

[3] Other testimony included that of Deputy Martin and other law enforcement officers, who testified to their investigation and findings; forensic scientists employed by the West Virginia State Police Forensic Laboratory, who testified to the DNA evidence found on petitioner's vehicle; and B.V.'s emergency room physician, who testified to B.V.'s injuries.

[4] In relevant part, West Virginia Code § 17C-4-1, addressing leaving the scene of a crash resulting in death, provides that

(a) The driver of any vehicle involved in a crash resulting in the injury to or death of any person shall immediately stop the vehicle at the scene of the crash or as close to the scene as possible and return to and remain at the scene of the crash until he or she has complied with the requirements of § 17C-4-3 of this code . . . .

. . . .

(d) . . . [A]ny driver who is involved in a crash that proximately causes the death of another person who intentionally violates § 17C-4-1(a) of this code when he or she knows or has reason to believe that another person has suffered physical injury in said crash is guilty of a felony . . . .

3

Rather, the State argued that it need only prove that "[t]he driver knew of the accident or reasonably should have known" and that petitioner "reasonably should have known that she hit something."

The jury found petitioner guilty of leaving the scene of a crash resulting in death, failure to give information and render aid, and failure to report a crash. It acquitted her of negligent homicide. The court, concluding that failure to give information and render aid is a lesser included offense of leaving the scene of a crash resulting in death, dismissed the failure to give information and render aid count. Although petitioner argued that failure to report a crash is also a lesser included offense of leaving the scene of a crash resulting in death, the court disagreed and sentenced petitioner to consecutive terms of incarceration of not less than one nor more than five years for leaving the scene of a crash resulting in death and ten days for failure to report a crash. Petitioner now appeals from the court's June 21, 2022, order memorializing that sentence.[5]

## II. Discussion

### A. Motion to Suppress

In her first assignment of error, petitioner argues that the court erred in denying her motion to suppress because the consent she gave Deputy Martin to search her vehicle was not validly obtained, so his subsequent search was unlawful, and the Virginia warrant was based upon information gathered during his unlawful search. So, she continues, the Virginia warrant was improperly issued, and the evidence seized from her vehicle pursuant to that improperly issued warrant was fruit of the initial illegal search and should have been suppressed.

In our review of the circuit court's ruling on petitioner's motion to suppress, we "construe all facts in the light most favorable to the State, as it was the prevailing party below," and review the court's findings of fact for "clear error." Syl. Pt. 1, in part, *State v. Lacy*, 196 W. Va. 104, 468 S.E.2d 719 (1996). However, "the ultimate determination as to whether a search or seizure was reasonable under the Fourth Amendment to the United States Constitution and Section 6 of Article III of the West Virginia Constitution is a question of law that is reviewed *de novo*." *Id.* at 107, 468 S.E.2d at 722, Syl. Pt. 2, in part. Ultimately, "a circuit court's denial of a motion to suppress evidence will be affirmed unless it is unsupported by substantial evidence, based on an erroneous interpretation of the law, or, based on the entire record, it is clear that a mistake has been made." *Id.*

---

[5] In addition to petitioner's formally raised assignments of error, she states, in conclusory fashion, that she was subjected to excessive punishment and requests that this Court, should it decline to reverse her convictions, remand for the imposition of a proportionate sentence. Petitioner does not support this claim with argument or authority, so we decline to consider it. *See State v. LaRock*, 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (1996) (citation omitted) ("Although we liberally construe briefs in determining issues presented for review, issues which are not raised, and those mentioned only in passing but are not supported with pertinent authority, are not considered on appeal.").

This assignment of error is predicated on two misconceptions. First, Deputy Martin's view of the exterior of petitioner's vehicle, without more, was not a search. "The Fourth Amendment of the United States Constitution, and Article III, Section 6, of the West Virginia Constitution protect an individual's reasonable expectation of privacy."[6] Syl. Pt. 7, *State v. Peacher*, 167 W. Va. 540, 280 S.E.2d 559 (1981). As such, "[a] 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). We have held that "[a]n individual's expectation of privacy in his automobile is less than that which he would have in his home or his place of business," "[t]he expectation of privacy associated with the exterior aspects of an automobile is even less than that associated with the interior portions," and "where an automobile is parked on a third person's property . . . and the automobile is open to view from a public highway, any possible expectation of privacy regarding the exterior aspects of the automobile is even further diminished." *Peacher*, 167 W. Va. at 541, 280 S.E.2d at 563, Syl. Pt. 8, in part. Indeed, "[t]he exterior of a car, of course, is thrust into the public eye, and thus to examine it does not constitute a 'search.'" *New York v. Class*, 475 U.S. 106, 114 (1986). And "[w]hat a person knowingly exposes to the public . . . is not a subject of Fourth Amendment protection." *Cardwell v. Lewis*, 417 U.S. 583, 591 (1974) (quoting *Katz v. United States*, 389 U.S. 347, 351 (1967)). Deputy Martin performed only a visual examination of petitioner's vehicle, which was parked on her employer's property and open for viewing. There was no infringement of any reasonable expectation of privacy. *See id.* ("[W]e fail to comprehend what expectation of privacy was infringed" by the "examination of the tire on the wheel and the taking of paint scrapings from the exterior of the vehicle left in the public parking lot"); *Peacher*, 167 W. Va. at 567 n.15, 280 S.E.2d at 577 n.15 ("[W]e think it would be hard to say that the Fourth Amendment protects a person from visual inspection of the exterior of his car in circumstances such as those found in this case.").

Then—correcting petitioner's second misconception—Virginia law enforcement officers responded and conducted their own independent examination of petitioner's vehicle, and they sought a warrant based upon their observations during that independent examination. While the warrant application for the Virginia warrant notes that Deputy Martin advised the affiant of supportive facts, it clearly specifies that a Virginia law enforcement officer "was on scene and personally viewed the vehicle and stain found." At the suppression hearing, Deputy Martin likewise made clear that Virginia law enforcement officers undertook their own view of petitioner's vehicle prior to obtaining the Virginia warrant, and information gleaned from their independent review provided support for the issuance of that warrant. Under these facts, we find no error in the court's denial of petitioner's motion to suppress.[7]

---

[6] Although the examination of the exterior of petitioner's vehicle occurred in Virginia, petitioner applies precedent addressing the West Virginia and United States Constitutions. We need not determine which state's law applies to this examination because applying Virginia law yields the same conclusion we reach here. *See Thompson v. Slayton*, 334 F. Supp. 352, 356 (W.D. Va. 1971) (finding no violation of the defendant's rights under the Fourth Amendment or Virginia statutory warrant requirement "because that [statute] in effect affords only the same protection as that afforded by the Fourth Amendment").

[7] Petitioner makes brief reference to Deputy Martin having acted "under color of office." In *State ex rel. State v. Gustke*, 205 W. Va. 72, 516 S.E.2d 283 (1999), we described—but left for

5

## B. Sufficiency of the Evidence

Next, petitioner challenges the sufficiency of the evidence to support her convictions. Petitioner points to Syllabus Point 3 of *State v. Tennant*, 173 W. Va. 627, 319 S.E.2d 395 (1984), where we held that West Virginia Code § 17C-4-1 (1951), addressing leaving the scene of an accident resulting in death, "must be read to require the State to prove that the driver charged with leaving the scene of an accident knew of the accident and the resulting injury or death or reasonably should have known of the injury or death from the nature of the accident." Petitioner maintains that there was insufficient evidence of her actual knowledge of the accident at the time that it occurred. She contends that West Virginia Code § 17C-4-6, addressing failure to report a crash, must likewise be read to require the State to prove actual knowledge of an accident at the time of its occurrence and that the insufficient evidence on this element similarly warrants setting aside this conviction.

We review all the evidence "in the light most favorable to the prosecution," "credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution," and will set aside a verdict "*only* when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." Syl. Pt. 3, in part, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995) (emphasis added). Here, we need not address the fact that *Tennant* interpreted an earlier and different version of West Virginia Code § 17C-4-1, grapple with whether actual knowledge is a required element of failure to report a crash, or discuss petitioner's insertion of "at the time of the accident" in articulating the knowledge element she argues exists because accepting petitioner's contentions as true affords no relief under the high bar set by *Guthrie*. The evidence was that the crash was so loud it sounded to witnesses like a "gunshot blast," and petitioner was seen applying her brakes immediately after. Mr. Dawson knew instantly that the driver had struck a child, and B.V. was found in the middle of the road, not in a ditch or obscured by brush. Then, petitioner initially denied the occurrence of anything unusual on her way to work, withholding for nearly a week her recollection of having felt like she hit "something" and seeing "something in the road." It cannot be said that there is no evidence to support a finding that she knew of the accident at the time of its occurrence, and this Court will not and cannot substitute its own credibility determinations for those made by the jury regarding

another day the decision of whether to adopt—the doctrine: "The 'under color of office' doctrine prohibits a law enforcement officer from using the indicia of his or her official position *to collect evidence that a private citizen would be unable to gather*." *Id.* at 81-82, 516 S.E.2d at 292-93. We observed that the purpose of the doctrine "is to prevent officers from improperly asserting official authority to gather evidence not otherwise obtainable," so "police officers acting outside their jurisdiction but not in fresh pursuit may not utilize *the power of their office* to gather evidence or ferret out criminal activity not otherwise observable," and "when officers unlawfully assert official authority, expressly or implicitly, in order to gain access to evidence, that evidence must be suppressed." *Id.* (quoting *State v. Phoenix*, 428 So. 2d 262, 266 (Fla. Dist. Ct. App. 1982)). To the extent Deputy Martin collected any evidence at petitioner's Virginia workplace, it was readily observable as described above. Consequently, even if we had adopted the doctrine, it would not apply to Deputy Martin's conduct.

6

what petitioner knew and when she knew it. *Guthrie*, 194 W. Va. at 663, 461 S.E.2d at 169, Syl. Pt. 3, in part.

### C. Jury Instructions

Third, petitioner assigns error to the court's jury instructions on leaving the scene of a crash involving death and failure to report a crash, claiming that the instructions do not make clear that the State bore the burden of proving both that she knew of the accident and that she knew or reasonably should have known that injury or death resulted from it. The jury instructions tracked the language of the operative statutes, West Virginia Code §§ 17C-4-1 and -6, and petitioner does not offer any specific language that should have been included. More important to the viability of her claim, though, is the fact that petitioner did not object to the court's instructions and, instead, actively participated in crafting them. As a result, petitioner waived any right she had to different or additional instructions. *See State v. Miller*, 194 W. Va. 3, 19, 459 S.E.2d 114, 130 (1995) (finding that the petitioner waived any right she had to an instruction on self-defense where she failed to submit a self-defense instruction, did not object to the court's failure to give such an instruction, and stated that she was satisfied with the court's proposed instructions and had no objection to them).

### D. Improper Closing Remarks

Petitioner also assigns error to the State's closing argument as it relates to this knowledge requirement. Petitioner reiterates her argument that the State was required to prove that she had actual knowledge of the accident and claims the prosecutor argued a lesser requirement to the jury: that the jury could convict petitioner if she "should have known" that an accident occurred. Petitioner acknowledges that she failed to object during the State's closing, so she urges application of the plain error doctrine.

"To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." *Id.* at 17, 459 S.E.2d at 118, Syl. Pt. 7. In the context of objectionable closing remarks, the doctrine is "sparingly applied," *State v. Grubbs*, 178 W. Va. 811, 818, 364 S.E.2d 824, 832 (1987), and application is not warranted here because, as explained above, the jury was instructed on all elements of the crimes of which she was convicted, and there was sufficient evidence to support a finding that petitioner knew she had been in an accident. "Plain error warrants reversal 'solely in those circumstances in which a miscarriage of justice would otherwise result.'" *Miller*, 194 W. Va. at 18, 459 S.E.2d at 129 (quoting *United States v. Frady*, 456 U.S. 152, 163 n.14 (1982)). This is not such a circumstance.

### E. Double Jeopardy

In her penultimate assignment of error, petitioner argues that the court erred in failing to find that failure to report a crash (West Virginia Code § 17C-4-6) is a lesser included offense of leaving the scene of a crash resulting in death (West Virginia Code § 17C-4-1). In short, petitioner argues that because West Virginia Code § 17C-4-1 requires a driver who is involved in a crash resulting in death to, among other things and generally stated, provide certain personal

identification information to the person struck, and because that requirement may be met by providing the information to a law enforcement officer at the scene, then West Virginia Code § 17C-4-6, which, generally stated, requires a driver involved in a crash resulting in death to notify law enforcement of the crash, then West Virginia Code § 17C-4-6 is a lesser included offense of § 17C-4-1.[8] Consequently, petitioner contends, she could not be punished for both offenses under double jeopardy principles.

---

[8] West Virginia Code § 17C-4-1 requires a driver involved in a crash resulting in injury or death to comply with West Virginia Code § 17C-4-3. *Id.* § 17C-4-1(a). Relevant to the double jeopardy analysis, West Virginia Code § 17C-4-3 provides that

> [t]he driver of any vehicle involved in a crash resulting in injury to or death of any person or damage to any vehicle which is driven or attended by any person shall, if physically able to do so, provide to the person struck or the driver or occupant of or person attending any vehicle collided with, the following:
>
> (A) His or her name, a valid telephone number where he or she may be contacted and the year, make, model and last four digits of the vehicle identification number of the vehicle he or she is driving; and
>
> (B) Proof of security and financial responsibility required by section three, article two-a, and section two, article four, chapter seventeen-d of this code, and if provided by insurance, the information provided upon the certificate of insurance, including the name of the insured, the name and contact information of the insurer and insurance policy number.

*Id.* § 3(a)(1). Further,

> [a] driver may meet the requirements of this subsection by providing the information required herein to a law-enforcement officer who is investigating or providing assistance at the scene of the collision, who shall, if practical under the circumstances, provide the information to any person entitled thereto pursuant to this subsection.

*Id.* § 3(a)(2).

> Virginia Code § 17C-4-6 provides that
>
> [t]he driver of a vehicle involved in a crash resulting in injury to or death of any person or total property damage to an apparent extent of $1,000 or more shall immediately by the quickest means of communication, give notice of such crash to the local police department if such crash occurs within a municipality, otherwise to the office of the county sheriff or the nearest office of the West Virginia State Police.

We review double jeopardy claims de novo, Syllabus Point 1, *State v. Duke*, 246 W. Va. 336, 873 S.E.2d 867 (2022), and begin with the recognition that "[w]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." *Id.* at 340, 873 S.E.2d at 870, Syl. Pt. 2 (quoting Syl. Pt. 8, *State v. Zaccagnini*, 172 W. Va. 491, 308 S.E.2d 131 (1983)). And

> [t]he test of determining whether a particular offense is a lesser included offense is that the lesser offense must be such that it is impossible to commit the greater offense without first having committed the lesser offense. An offense is not a lesser included offense if it requires the inclusion of an element not required in the greater offense.

*Id.*, Syl. Pt. 6, in part (quoting *State v. Bland*, 239 W. Va. 463, 801 S.E.2d 478 (2017)). West Virginia Code § 17C-4-6 is not a lesser included offense of West Virginia Code § 17C-4-1 because each statute obligates a driver to provide different information. A driver violates West Virginia Code § 17C-4-1 by failing to stop at the scene of the crash and remain until he or she has provided the required personal identification information, whereas a driver violates West Virginia Code § 17C-4-6 by failing to give notice of the crash itself. Accordingly, it is possible to commit the offense of leaving the scene of a crash resulting in death without first having committed the offense of failure to report a crash, and each statutory provision requires proof of a fact not required by the other, so there is no merit to petitioner's double jeopardy claim.

## F. Cumulative Error

In her final assignment of error, petitioner argues that the cumulative effect of the errors assigned above deprived her of a fair trial. "Where the record of a criminal trial shows that the cumulative effect of numerous errors committed during the trial prevented the defendant from receiving a fair trial, his conviction should be set aside, even though any one of such errors standing alone would be harmless error." Syl. Pt. 5, *State v. Smith*, 156 W. Va. 385, 193 S.E.2d 550 (1972). Having discerned no errors below, the cumulative error doctrine is inapplicable. *See State v. Knuckles*, 196 W. Va. 416, 426, 473 S.E.2d 131, 141 (1996) ("[B]ecause we find that there is no error in this case, the cumulative error doctrine has no application.").

### III.    Conclusion

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** February 20, 2024

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice C. Haley Bunn

9

**DISSENTING:**

Justice William R. Wooton

Wooton, Justice, dissenting:

I dissent to the majority's resolution of this case. I would have set this case for oral argument to thoroughly address the error alleged in this appeal. Having reviewed the parties' briefs and the issues raised therein, I believe a formal opinion of this Court was warranted, not a memorandum decision. Accordingly, I respectfully dissent.