Donald J. Mark, J.
The driver of a motor vehicle was apprehended hy two State troopers for violation of section 1126 (suhd. [a]) of the Vehicle and Traffic Law. As the vehicle stopped, the driver and the defendant passenger attempted to switch positions. Because of this, both were requested to produce their operators’ licenses and the registration. The driver produced both documents and the defendant his operator’s license.
One trooper asked the defendant passenger to provide further identification and he removed a notebook and other papers from his pants pocket in compliance. At that instant the wind blew up the cover of the notebook and the trooper observed figures which he recognized as gambling records. The trooper then ordered the defendant passenger to remove an envelope from his coat pocket; the envelope contained ‘ ‘ policy ’ ’ slips.
The defendant was charged with violation of section 225.15 (suhds. 1, 2) of the Penal Law. He now moves to suppress the above evidence on the ground the search was unreasonable.
The switch between the driver and the defendant passenger was aborted, so at no time did the latter lose his identity as a passenger. Thus, the initial issue to he determined is whether the defendant could he required to produce his operator’s license.
The trooper could reasonably suspect that the defendant was violating section 501 (suhd. 4) of the Vehicle and Traffic Law (permitting unlicensed operation). The police have a statutory duty under section 423 of the Vehicle and Traffic Law to investigate violations of that law. (People v. Dozier, 52 Misc 2d 631 [1967].) The police likewise have a statutory right under section 401 (suhd. 4) of the same law to require a non- *1040 driver to produce Ms license and registration. (People v. Scianno, 20 A D 2d 919 [1964].) They also possess a common-law right. (United States ex rel. Farrugia v. Bhono, 256 F. Supp. 391 [1966].)
Therefore, the trooper was justified in demanding that the defendant surrender his operator’s license.
The next question to be resolved is whether the demand of the trooper that the defendant produce additional identification constituted a search.
In People v. Abramson (40 Misc 2d 723 [1963]) a police officer entered a building to investigate the ringing of a burglar alarm and encountered the defendant. The defendant satisfactorily explained his presence but was observed placing an envelope in his pocket. The officer demanded the envelope, found marijuana and arrested the defendant. The court held that the defendant’s handing over the envelope at the officer’s direction was the equivalent of a search and was illegal.
In People v. Sapp (43 Misc 2d 81 [1964]) the defendant, a known gambler, was apprehended by two detectives for failing to signal for a left turn. One detective asked the defendant to give him policy slips (which he assumed the defendant because of his occupation had in his possession). The defendant complied with the detective’s direction and was arrested. The court held this was also an illegal search.
Since the courts in Abramson and Sapp (supra) equated the request of a police officer that the defendant produce a designated item to a search, it follows that the request in this case that the defendant provide additional identification should be denominated a search. The law of search and seizure now becomes applicable.
A search to be reasonable must be conducted pursuant to a legal search warrant; or by consent; or as an incident of a legal arrest. (People v. Loria, 10 N Y 2d 368 [1961].) The defendant here was not searched pursuant to a search warrant, so this search to be legal must depend upon the other two principles.
"When a search and seizure are based upon consent, the burden of proof is upon the People to establish the voluntariness of that waiver of a constitutional right. (People v. Whitehurst, 25 N Y 2d 389 [1969].)
In Whitehurst the defendant was under observation because of a previous narcotic arrest. A detective approached him in a store and asked him “What have you got this time?”,' referring to narcotics. The defendant reached into his pocket, *1041 produced two glassine envelopes and was arrested. The court held that the defendant was responding to the authority of the police and that there was no consent to the search.
In People v. Jones (38 Misc 2d 125 [1963]) the troopers stopped the defendant while he was walking along the highway at night carrying a suitcase. They asked him if he possessed a gun and he replied there was one in his suitcase. At the trooper’s request the defendant opened the suitcase exposing a revolver whereupon he was arrested. It was likewise held here that the defendant had not consented to the search.
Comparing the demand of the trooper in the case at bar to the above cases, it becomes obvious that the People did not meet their burden of proof and that the defendant here did not consent to the search.
If it is claimed that the defendant’s detention while he was asked for additional identification was an arrest and that the search was conducted as the incident of a lawful arrest, the People have the burden of showing probable cause. (People v. Malinsky, 15 N Y 2d 86 [1965].)
People v. Verrecchio (23 N Y 2d 489 [1969]) is somewhat comparable to the instant case. There an unreliable informer told a police officer that the defendant usually had heroin in his possession. The officer later observed the defendant conversing with two known drug users who quickly walked away as the officer approached. The officer searched the defendant, found heroin and an arrest followed. The suspicious flight of the drug users there could be compared with the suspicious movement of the defendant in this case. However, the court-held that this state of facts did not give rise to probable cause.
Abramson (40 Misc 2d 723, supra) is also highly analogous to this case. There, a defendant suspected of burglary satisfied a police officer that this was not the case but an envelope was demanded from him anyway. Here the defendant suspected of a traffic misdemeanor proved otherwise to the trooper but nevertheless additional identification was requested. The court in Abramson held that the police officer acted on mere suspicion falling short of probable cause.
Based on the rationale of the above cases, the abortive attempt of the defendant to switch positions with the driver of the vehicle, while it must be considered suspicious behavior, cannot be considered probable cause. Therefore, if the defendant’s detention be denominated an arrest, such arrest was illegal and the search incidental thereto was consequently unreasonable.
*1042 It is fundamental that a search that is unreasonable for want of probable cause cannot be made reasonable by what the search uncovers. (United States v. Di Re, 332 U. S. 581 [1948]; People v. Rivera, 14 N Y 2d 441 [1964].)
The final issue to be .resolved is whether or not the accidental blowing open of the defendant’s notebook exposing gambling records falls within the principle that objects in plain view of a police officer who has a right to be in the position to have that view are subject to seizure. (Harris v. United States, 390 U. S. 234 [1968]; People v. Merola, 30 A D 2d 963 [1968].)
In People v. Battle (12 N Y 2d 866 [1962]) a police officer stopped the defendant’s vehicle and asked the driver to identify himself. As the defendant alighted from his automobile a package containing policy slips fell from his trousers and the defendant was arrested. In Scianno (20 A D 2d 919, supra) the registration was demanded from the nondriving owner of a vehicle. While complying with the officer’s' demand, the defendant exposed an unlawfully possessed weapon. The courts denied both motions to suppress because the incriminating evidence in each case was accidentally discovered.
However, the above cases do not support a determination of accidental finding in this case, because there the officers were authorized to demand the documents requested and the evidence was accidentally exposed to view in the course of such compliance. Here the trooper was not justified in demanding additional identification from the defendant, so he had no right to be in the position to observe the figures in the notebook when they became accidentally exposed.
The reasoning applicable to production of the notebook applies equally to the production of the policy slips.
Accordingly, the defendant’s motion to suppress the evidence on the ground that the search was unreasonable is hereby granted.