360 S.E.2d 216

**STATE of West Virginia**

v.

**William H. MUEGGE.**

No. 17025.

Supreme Court of Appeals of
West Virginia.

July 15, 1987.

David W. Johnson, Asst. Atty. Gen., for appellant.

Robert A. Yahn, Wheeling, for appellee.

McGRAW, Chief Justice:

This is an appeal by William Hubert Muegge from a final judgment order entered in the Circuit Court of Marshall County following a jury verdict finding him guilty of shoplifting in violation of West Virginia Code § 61–3A–3(a)(1) (1984 Replacement Vol.). We reverse the conviction and remand the case to the circuit court because evidence obtained from the appellant and used against him at trial was improperly admitted.

On September 29, 1984, the appellant, who was then the mayor of Wheeling, West Virginia, was shopping at Rink's Department Store in Benwood, a town located a few miles south of Wheeling. The private security guard employed by the store noticed the appellant placing several items of merchandise in his pockets during the course of his shopping. She continued to observe him as he went through the checkout aisle and did not see him present or pay for those items. The security guard approached the appellant as he left the store, identified herself, and asked to speak with the appellant inside the store, adding, "I will do things for you the easy way or the hard way."

The appellant accompanied the security guard and the assistant store manager to the security office just before three o'clock in the afternoon. That office is a windowless room measuring about four feet by ten feet, and does not contain a telephone. The security guard ordered the appellant to empty his pockets, which contained several unpaid for items valued at a total of $10.65. She then informed the appellant that she was going to read him his rights and proceeded to read aloud from a prepared form labeled "constitutional rights." She then asked the appellant to sign a waiver of his constitutional rights.

The appellant refused to sign the proffered waiver form and told the security guard that he wanted the assistance of his lawyer. The security guard refused the appellant's request and instead said, "I will call the state police. We will wait until they get here and we will take care of it from there." The appellant asked her not to call the state police and asked to see the store manager so that something could be worked out. The security guard refused to allow the appellant to talk to the store manager and went into an adjacent office to summon a member of the state police.

At this point, the evidence presented at trial is in conflict. The security guard's testimony was to the effect that nothing else occurred until the state police trooper arrived. She said that she informed the trooper that the appellant was not cooperating by refusing to answer any of her questions. She testified that the appellant then changed his mind and agreed to sign the waiver. She said she again read the appellant his rights, in the presence of the trooper. After signing the waiver, the appellant completed a "questionnaire" which elicited various incriminating statements from the appellant.[1] The security guard, with appellant's assistance, also completed an "apprehension report."

The state trooper's testimony varied significantly from the security guard's. He testified that the waiver was already signed and the questionnaire completed before he arrived at 3:18 p.m. He denied that the security guard ever told him that the appellant was refusing to cooperate and he denied that the security guard read the constitutional rights form in his presence. He did, however, testify that he never explained these rights to the appellant, relying on his understanding that the security guard had already done so. The trooper left with the appellant in custody at 3:41 p.m.

At trial, the unpaid for items were admitted without objection while the questionnaire was read aloud to the jury and entered into evidence over the defendant's objection. The jury returned a guilty verdict and this appeal is from the ensuing sentence imposing a fine on the appellant and assessing a civil penalty in favor of the department store.

The appellant's primary contention before this Court is that his detention by the security guard was of such a nature as to require application of federal and state constitutional protections against compelled self-incrimination. The appellee responds that the appellant's detention did not trigger any constitutional safeguards and, alternatively, argues that the appellant waived any applicable privileges.

## I.

In detaining the appellant, the security guard acted pursuant to West Virginia Code § 61–3A–4 (1984 Replacement Vol.). That statute reads, in its entirety:

An act of shoplifting as defined herein, is hereby declared to constitute a breach of peace and any owner of merchandise, his agent or employee, or any law-enforcement officer who has reasonable ground to believe that a person has committed shoplifting, may detain such person in a reasonable manner and for a reasonable length of time not to exceed thirty minutes, for the purpose of investigating whether or not such person has committed or attempted to commit shoplifting. Such reasonable detention shall not constitute an arrest nor shall it render the owner of merchandise, his agent or employee, liable to the person detained.

The primary purpose of this statute is to temper the common law's harsh rule of civil liability in actions for false imprisonment. At common law, a merchant detaining someone he suspected of stealing his goods was subject to liability if it turned out the accused party was not guilty. Annotation, *Construction and Effect, In False Imprisonment Action, of Statute Providing for Detention of Suspected*

---

1. For example, one question asked that an x be placed at the appropriate answer:

I took the merchandise without paying because:
I thought I could get away with it .............. ___
The value seemed small .......................... ___
I didn't have sufficient money ................... ___
Others have done it .............................. ___
Other reason (s) ................................. ___

*Shoplifters,* 47 A.L.R.3d 998, 1004–05 (1973); *see Allen v. Lopinsky,* 81 W.Va. 13, 94 S.E. 369 (1917). Numerous legislatures and courts have modified the original rule so as to protect the merchant from liability so long as he acts on reasonable grounds and in a reasonable fashion. Annotation, 47 A.L.R.3d 998; *see, e.g., Lindsey v. Sears, Roebuck & Co.,* 389 So.2d 902 (La. App.1980); *Johnson v. K–Mart Enterprises, Inc.,* 98 Wis.2d 533, 297 N.W.2d 74 (App.1980); *see also* Restatement (Second) of Torts § 120A comment (a) b (1965). Thus, the propriety of a West Virginia merchant's detention of a possible shoplifter is no longer dependent on a finding that the suspect was actually guilty.

■ In the context of this case, an arrest is the "detaining of the person of another ... by any act or speech that indicates an intention to take him into custody and that subjects him to the actual control and will of the person making the arrest." *State v. Byers,* 159 W.Va. 596, 604, 224 S.E.2d 726, 732 (1976). Under the common law, a private citizen is authorized to arrest another who commits a misdemeanor in his presence when that misdemeanor constitutes a breach of the peace. 5 Am. Jur. 2d *Arrest* § 34 (1962). The impact of the West Virginia statute is to modify the common law rule regarding any subsequent liability, *see Lopinsky,* 81 W.Va. 13, 94 S.E. 369; however, the statute cannot make an arrest into something else by refusing to call it an arrest.[2]

The question presented us is whether the appellant's arrest by the security guard activates constitutional protections. We initially examine the appellant's right, under article three, section six of the West Virginia Constitution, to be free from unreasonable searches and seizures. Next, our analysis concentrates on article three, section five of our constitution and appellant's right not to be compelled to be a witness against himself.

## II.

■ This Court has held that the proscription on unreasonable searches and seizures does not apply to private individuals unless they are acting as instruments or agents of the state. *State v. Oldaker,* 172 W.Va. 258, 262, 304 S.E.2d 843, 846 (1983); *State v. Riser,* 170 W.Va. 473, 294 S.E.2d 461 (1982); *see* Cleckley, *Handbook on West Virginia Criminal Procedure* Vol. I, p. 183 (1985); *see also* 1 LaFave, *Search and Seizure* § 1.6 (1987). In the instant case, however, we find that the security guard was not acting in a purely private fashion, but under the mantle of state authority and that, therefore, the protections of article three, section six of the West Virginia Constitution apply to her dealings with the appellant.

While we recognize that some jurisdictions have refused to invoke constitutional protections in searches by privately employed security officers, *see* Annotation, *Admissibility, In Criminal Case, of Evidence Obtained by Search by Private Individuals,* 36 A.L.R.3d 553, 567–70 (1971), we think the better rule is that such protections apply when the security officers act pursuant to statutory authority. *People v. Zelinski,* 24 Cal.3d 357, 155 Cal. Rptr. 575, 594 P.2d 1000 (1979); *People v. Eastway,* 67 Mich.App. 464, 241 N.W.2d 249 (1976); *see Commonwealth v. Leone,* 386 Mass. 329, 435 N.E.2d 1036 (1982); *see also State v. Okeke,* 82 Or.App. 393, 728 P.2d 872 (1986).

Private security forces today play an increasing role in the enforcement of our criminal laws, a traditional state function. A federal study shows that about one-half of the persons employed fighting crime in this country, or more than one million persons, are employed by the private sector. Ringel, *Searches & Seizures* at § 2.3(a). Private security police regularly investigate criminal activity and often play a role which goes beyond the protection of their employer's property interests. *See Leone,* 386 Mass. at 336, 435 N.E.2d at 1041. The

---

**2.** "The distinction between the merchant's power to 'detain,' the terminology used in most statutes, and his power to arrest is artificial."

Wm. Ringel, *Searches & Seizures, Arrests and Confessions* § 23.8(c) (1986).

unfettered conduct of private security personnel presents a threat to the rights of our citizens which is equivalent to any unlawful conduct of public police officers, and the application of constitutional protections to their conduct should have a deterrent effect on the unlawful practices of these security personnel. *Zelinski*, 24 Cal.3d at 366, 155 Cal. Rptr. at 580, 594 P.2d at 1005. Therefore we hold that the proscription against unreasonable searches and seizures found in article three, section six of the West Virginia Constitution applies when a citizen has been detained pursuant to statutory authority, as in this case.

The rule is clearly established in West Virginia that

> Searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment and Article III, Section 6 of the West Virginia Constitution-subject only to a few specifically established and well-delineated exceptions. The exceptions are jealously and carefully drawn, and there must be a showing by those who seek exemption that the exingencies of the situation made that course imperative.

Syl. Pt. 1, *State v. Moore*, 165 W.Va. 837, 272 S.E.2d 804 (1980). Further, "[t]he burden rests on the State to show by a preponderance of the evidence that the warrantless search falls within an authorized exception." *Id.* at Syl. Pt. 2.

■ When the security guard ordered the appellant to empty his pockets, she conducted a search, because a demand to disclose or produce concealed objects is treated as a search for purposes of constitutional analysis. *State v. Hill*, 10 Ariz. App. 599, 461 P.2d 168 (1969); *M.J. v. State*, 399 So.2d 996 (Fla. App.1981); *People v. Williams*, 69 Misc.2d 1038, 332 N.Y.S.2d 693 (1970). A warrantless search of the person and the immediate area under his control is authorized incident to a valid arrest, Syl. Pt. 6, *Moore*, 165 W.Va. 837, 272 S.E.2d 804, but such a search is only permissible when it is necessary to uncover weapons that might be used against the arresting officer or to prevent destruction

of evidence by the arrested party. *State v. Cook*, 175 W.Va. 185, 332 S.E.2d 147 (1985); *Moore*, 165 W.Va. 837, 272 S.E.2d 804. No showing has been made by the State that the search by the security guard was necessary for either of these reasons, or that the evidence should have been admitted under any other exception to the warrantless search prohibition. On remand, the items taken from the appellant should be admitted only if the state can meet its burden of proving the security guard's search falls within an authorized exception to the general rule.

### III.

■ We next turn to the appellant's contention that the circuit court erred when it admitted into evidence the incriminating statements made by the appellant on the questionnaire. As noted earlier, article three, section five of the West Virginia Constitution provides that no person may be compelled to be a witness against himself in any criminal case. We have held that this constitutional section provides at least co-equal coverage as does the fifth amendment to the United States Constitution, and its scope is to be liberally interpreted. *State v. Burton*, 163 W.Va. 40, 254 S.E.2d 129 (1979).

■ In the landmark case of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court held that, whenever a person is subject to custodial interrogation, certain procedural safeguards must be employed to protect the privilege against self-incrimination. Thus, a suspect must be warned of his constitutional rights and the "[o]pportunity to exercise these rights must be afforded to him throughout the interrogation." *Id.* at 479, 86 S.Ct. at 1630. This Court has adopted the reasoning of *Miranda* and has gone on to expand its protections. *See, e.g., State v. Hamrick*, 160 W.Va. 673, 236 S.E.2d 247 (1977). It is clear that once a person has exercised his rights under article three, section five of the West Virginia Constitution, those in whose custody he is held must scrupulously honor that privilege. *See, e.g.,* Syl. Pt. 3,

*State v. Rissler,* 165 W.Va. 640, 270 S.E.2d 778 (1980); Syl. Pt. 1, *State v. Bradley,* 163 W.Va. 148, 255 S.E.2d 356 (1979).

 While no constitutional warnings are required to establish the admissibility of purely private conversations,[3] for the reasons analogous to those expressed in part II of this opinion, we hold that the procedural safeguards protecting the constitutional right not to be compelled to be a witness against oneself in a criminal case apply whenever a citizen is subject to custodial interrogation pursuant to statutory authority. Thus, it was error for the circuit court to admit the questionnaire over the appellant's objection, because that evidence was obtained after the appellant had refused to waive his constitutional rights and had clearly stated his desire for legal counsel. *Bradley,* 163 W.Va. 148, 255 S.E.2d 356. Contrary to the assertion by the appellee that the appellant voluntarily waived any constitutional rights, it is clear that only the security guard's refusal to allow the appellant to exercise his rights resulted in the appellant's subsequent admissions. This is precisely the sort of abuse this Court was concerned about in *Bradley.* On remand, the questionnaire should not be admitted into evidence.

### IV.

Appellant's assignment of error regarding the circuit court's failure to direct a verdict of not guilty is summarily made and may be summarily disposed of. We have refused to adopt the appellee's contention that the appellant waived his constitutional rights, and the appellant has not made a showing that he was entitled to a directed verdict based on the sufficiency of the evidence. *See* Syl. Pt. 1, *State v. Horton,* 170 W.Va. 395, 294 S.E.2d 248 (1982).

Because evidence obtained from the appellant and used against him at trial was improperly admitted, the appellant's conviction is reversed and the case remanded to the circuit court.

Reversed and remanded.

---

3. Defendants may, however, raise the issue of whether a statement made to a private party was voluntary. *State v. Sanders,* 161 W.Va. 399, 242 S.E.2d 554 (1978), *overruled on other grounds, State ex rel. White v. Mohn,* 168 W.Va. 211, 283 S.E.2d 914 (1981).