# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

## September 2013 Term

**FILED**

**September 26, 2013**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 12-0534

**STATE OF WEST VIRGINIA,**
**Plaintiff Below, Respondent**

**V.**

**JOSEPH FREDERICK HORN,**
**Defendant Below, Petitioner**

---

**Appeal from the Circuit Court of McDowell County**
**Honorable Rudolph J. Murensky, II, Judge**
**Criminal Action No. 10-F-8-M**

**AFFIRMED**

---

**Submitted: September 11, 2013**
**Filed: September 26, 2013**

Thomas H. Evans, III
Thomas Hanna Evans, PLLC
Oceana, West Virginia
Attorney for the Petitioner

Patrick Morrisey
Attorney General
Scott Johnson
Senior Assistant Attorney General
Charleston, West Virginia
Attorneys for the Respondent

**JUSTICE DAVIS delivered the Opinion of the Court.**

**SYLLABUS BY THE COURT**

1.      "In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review.  We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard.  Questions of law are subject to a *de novo* review."  Syllabus point 3, *State v. Vance,* 207 W. Va. 640, 535 S.E.2d 484 (2000).

2.      "When a criminal defendant undertakes a sufficiency challenge, all the evidence, direct and circumstantial, must be viewed from the prosecutor's coign of vantage, and the viewer must accept all reasonable inferences from it that are consistent with the verdict.  This rule requires the trial court judge to resolve all evidentiary conflicts and credibility questions in the prosecution's favor; moreover, as among competing inferences of which two or more are plausible, the judge must choose the inference that best fits the prosecution's theory of guilt."  Syllabus point 2, *State v. LaRock*, 196 W. Va. 294,  470 S.E.2d 613 (1996).

3.      "The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to

i

determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt." Syllabus point 1, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995).

4. "A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled." Syllabus point 3, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995).

5. "Although premeditation and deliberation are not measured by any particular period of time, there must be some period between the formation of the intent to

kill and the actual killing, which indicates the killing is by prior calculation and design. This means there must be an opportunity for some reflection on the intention to kill after it is formed." Syllabus point 5, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995).

6.     "In considering the constitutionality of a legislative enactment, courts must exercise due restraint, in recognition of the principle of the separation of powers in government among the judicial, legislative and executive branches. Every reasonable construction must be resorted to by the courts in order to sustain constitutionality, and any reasonable doubt must be resolved in favor of the constitutionality of the legislative enactment in question. Courts are not concerned with questions relating to legislative policy. The general powers of the legislature, within constitutional limits, are almost plenary. In considering the constitutionality of an act of the legislature, the negation of legislative power must appear beyond reasonable doubt." Syllabus point 1, *State ex rel. Appalachian Power Co. v. Gainer*, 149 W. Va. 740, 143 S.E.2d 351 (1965).

7.     "'A criminal statute must be set out with sufficient definiteness to give a person of ordinary intelligence fair notice that his contemplated conduct is prohibited by statute and to provide adequate standards for adjudication.' Syllabus Point 1, *State v. Flinn*, 158 W. Va. 111, 208 S.E.2d 538 (1974)." Syllabus point 1, *State v. Bull*, 204 W. Va. 255, 512 S.E.2d 177 (1998).

8.      "W. Va. Code § 61-2-1 (1991) enumerates three broad categories of homicide constituting first degree murder: (1) murder by poison, lying in wait, imprisonment, starving; (2) by any wilful, deliberate and premeditated killing; and (3) in the commission of, or attempt to commit, inter alia, arson, sexual assault, robbery or burglary."  Syllabus point 6, *State v. Davis*, 205 W. Va. 569, 519 S.E.2d 852 (1999).

9.      "[Q]uestions of law and interpretations of statutes and rules are subject to a *de novo* review." Syllabus point 1, in part, *State v. Duke*, 200 W. Va. 356, 489 S.E.2d 738 (1997).

10.     The second category of first degree murder described in W. Va. Code § 61-2-1 (1991) (Repl. Vol. 2010) as "[m]urder . . . by any willful, deliberate and premeditated killing" is not unconstitutionally vague and does not violate United States Constitution Amendment XIV, Section 1, or West Virginia Constitution Article III, Section 10.

11.     "When reviewing a ruling on a motion to suppress, an appellate court should construe all facts in the light most favorable to the State, as it was the prevailing party below. Because of the highly fact-specific nature of a motion to suppress, particular deference is given to the findings of the circuit court because it had the opportunity to

iv

observe the witnesses and to hear testimony on the issues. Therefore, the circuit court's factual findings are reviewed for clear error." Syllabus point 1, *State v. Lacy*, 196 W. Va. 104, 468 S.E.2d 719 (1996).

12. "The action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion." Syllabus point 1, *State v. Calloway*, 207 W. Va. 43, 528 S.E.2d 490 (1999).

13. "A law enforcement officer acting outside of his or her territorial jurisdiction has the same authority to arrest as does a private citizen and may make an extraterritorial arrest under those circumstances in which a private citizen would be authorized to make an arrest." Syllabus point 2, *State ex rel. State v. Gustke*, 205 W. Va. 72, 516 S.E.2d 283 (1999).

14. Under the common law, a private citizen is authorized to arrest another person who the private citizen believes has committed a felony.

15. A police officer acting beyond his or her territorial jurisdiction retains power as a private citizen to make an arrest when a felony has been committed and the officer has reasonable grounds to believe the person arrested has committed the crime.

**Davis, Justice:**

The petitioner herein and defendant below, Joseph Frederick Horn (hereinafter "Mr. Horn"), by the circuit court's order dated February 21, 2012, was sentenced following his jury convictions for the offenses of "Murder in the First Degree" and "Arson in the First Degree."[1]  Before this Court, Mr. Horn appeals the circuit court's denial of his post-trial motions.  In his argument, Mr. Horn assigns four errors:  (1) the evidence was insufficient to support the jury verdict; (2) W. Va. Code § 61-2-1 (1991) (Repl. Vol. 2010)[2] is unconstitutionally vague; (3) the trial court failed to suppress the introduction of illegally obtained evidence; and (4) the trial court erred when it denied his post-trial motions.  Based upon the parties' written briefs and oral arguments, the appendix record designated for our consideration, and the pertinent authorities, we affirm.

## I.

## FACTUAL AND PROCEDURAL HISTORY

On June 15, 2009, Michael Rife (hereinafter "decedent") was murdered in his home in McDowell County, West Virginia.  When decedent's body was found, a small fire

---

[1]The lower court sentenced Mr. Horn to confinement for the remainder of his natural life for his conviction for "Murder in the First Degree" and, with the jury's recommendation of mercy, noted that Mr. Horn shall be eligible for parole in fifteen years.  Also, Mr. Horn was sentenced to a period of five years incarceration for the "Arson in the First Degree" conviction, with both sentences to be served concurrently.

[2]For the relevant language and discussion regarding W. Va. Code § 61-2-1 (1991) (Repl. Vol. 2010), see Section III.B., *Discussion*, *infra*.

was burning under his bed.  The fire burned out without causing any harm, and the cause of death was multiple stab wounds.

The location of decedent's home was on the border between the Virginia and West Virginia boundary.  When decedent's body was found, a call was placed to 911.  The call was dispatched through Virginia. When the Virginia police arrived at decedent's home, they realized they were in West Virginia and, therefore, notified the West Virginia police. The Virginia officers left the scene when the West Virginia police arrived at the decedent's home and began their investigation.

During their work at the crime scene, the West Virginia officers learned that Mr. Horn had been with decedent earlier that evening.  The officers sought to question Mr. Horn and located him nearby at decedent's neighbor's house.  When the West Virginia officers asked to speak to Mr. Horn, he came out of the home.  The West Virginia officers saw that Mr. Horn had dried blood in his ear, which led to their observation that there also was blood on Mr. Horn's waistband and on his boots. Upon looking through the window of Mr. Horn's truck, they also observed blood on the steering wheel of Mr. Horn's vehicle.

When Mr. Horn was asked about the blood in his ear, he immediately attempted to wipe it away.  Additionally, Mr. Horn was scuffing the top of his boots with the heel of

the opposite foot, leading the officers to believe he was trying to destroy the evidence of blood on the boots. The West Virginia officers handcuffed Mr. Horn and placed him in the police cruiser. They also removed his boots as evidence. Although the officers initially believed the neighbor's house was located in West Virginia, the owner of the house informed the officers that the house was in Virginia. The West Virginia officers then summoned the Virginia police.

Mr. Horn was arrested by the Virginia police upon their arrival. Warrants were obtained to search Mr. Horn and his truck. The Virginia officers seized Mr. Horn's blood-stained clothing and transported him to jail in Virginia. Ultimately, Mr. Horn waived extradition and was returned to West Virginia.

On February 16, 2010, Mr. Horn was indicted on three counts: murder in the first degree, robbery in the first degree,[3] and arson in the first degree. A suppression hearing was held June 6, 2011, during which the trial court discussed at length whether Mr. Horn's arrest was admissible under a theory of "fresh pursuit." The circuit court further hypothesized that the West Virginia police properly arrested Mr. Horn under the same theory as would apply to an arrest executed by a private citizen. Ultimately, the trial court denied Mr. Horn's motion to suppress the evidence.

---

[3]The robbery charge was dismissed.

Following a December 6, 2011, jury trial, Mr. Horn was convicted of "Murder in the First Degree" and "Arson in the First Degree." The jury recommended mercy in sentencing on the murder conviction. On February 21, 2012, the trial court denied Mr. Horn's post-trial motions and sentenced him to life in prison with a recommendation of mercy for the murder conviction and to a determinate term of five years in prison for the arson conviction, both sentences to run concurrently. This appeal followed.

## II.

## STANDARD OF REVIEW

On appeal, Mr. Horn sets forth various assignments of error that involve different standards of review. The applicable standards will be addressed in the pertinent sections of this Opinion. As a general matter, however, we have held that,

> [i]n reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syl. pt. 3, *State v. Vance,* 207 W. Va. 640, 535 S.E.2d 484 (2000). Mindful of these applicable standards, we now examine the individual issues presented in this appeal.

**DISCUSSION**

Mr. Horn assigns four errors on appeal: (1) the evidence was insufficient to support the jury verdict; (2) W. Va. Code § 61-2-1 is unconstitutionally vague; (3) the trial court failed to suppress the introduction of illegally obtained evidence; and (4) the trial court erred when it denied the post-trial motions. Each alleged error will be addressed separately.

### A.  *Insufficiency of the Evidence*

Mr. Horn's first assignment of error relates to the sufficiency of the evidence. Mr. Horn argues that the trial court erred in denying his requests for judgment of acquittal because the State failed to present evidence of each statutory element of murder pursuant to W. Va. Code § 61-2-1.[4] Specifically, Mr. Horn avers that there was no evidence proving that he committed murder, and, even if the evidence proved murder, it failed to show any premeditation and/or malice, which he claims are required elements under the statute for first

---

[4]We note that Mr. Horn also asserted that the evidence was insufficient to support his arson conviction under W. Va. Code § 61-3-1 (1997) (Repl. Vol. 2010). However, Mr. Horn's brief failed to develop this issue. "Although we liberally construe briefs in determining issues presented for review, issues which are not raised, and those mentioned only in passing but are not supported with pertinent authority, are not considered on appeal." *State v. LaRock*, 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (1996), citing *State v. Lilly*, 194 W. Va. 595, 605 n.16, 461 S.E.2d 101, 111 n.16 (1995) ("casual mention of an issue in a brief is cursory treatment insufficient to preserve the issue on appeal"). Therefore, we determine that the argument in regard to the arson statute was abandoned because it was not fully briefed; accordingly, the issue will not be addressed by this Court.

degree murder. Conversely, the State offers that sufficient circumstantial evidence was introduced to sustain Mr. Horn's convictions.

We have instructed that

> [w]hen a criminal defendant undertakes a sufficiency challenge, all the evidence, direct and circumstantial, must be viewed from the prosecutor's coign of vantage, and the viewer must accept all reasonable inferences from it that are consistent with the verdict. This rule requires the trial court judge to resolve all evidentiary conflicts and credibility questions in the prosecution's favor; moreover, as among competing inferences of which two or more are plausible, the judge must choose the inference that best fits the prosecution's theory of guilt.

Syl. pt. 2, *State v. LaRock*, 196 W. Va. 294, 470 S.E.2d 613 (1996). When a circuit court's ruling on a sufficiency challenge is appealed to this Court, we are guided by the principle that

> [t]he function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. pt. 1, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995). We have cautioned, however, that

> [a] criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and

6

must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

Syl. pt. 3, *Guthrie*, 194 W. Va. 657, 461 S.E.2d 163.

Mr. Horn was charged with murder "by any willful, deliberate and premeditated killing[.]" To sustain a conviction for this category of first degree murder, it is essential that "the State produce[ ] evidence that the homicide was a result of malice . . . and was deliberate and premeditated [.]" Syl. pt. 3, in part, *State v. Hatfield*, 169 W. Va. 191, 286 S.E.2d 402 (1982). As previously stated, one of Mr. Horn's specific complaints was that the evidence failed to prove premeditation. This Court has had previous occasion to discuss the premeditation element of first degree murder:

Although premeditation and deliberation are not measured by any particular period of time, there must be some period between the formation of the intent to kill and the actual killing, which indicates the killing is by prior calculation and design. This means there must be an opportunity for some reflection on the intention to kill after it is formed.

Syl. pt. 5, *Guthrie*, 194 W. Va. 657, 461 S.E.2d 163. Furthermore,

[t]he duration of that period cannot be arbitrarily fixed. The time in which to form a deliberate and premeditated design varies as

7

the minds and temperaments of people differ and according to the circumstances in which they may be placed. Any interval of time between the forming of the intent to kill and the execution of that intended, is sufficient to support a conviction for first degree murder.

Syl. pt. 6, in part, *Guthrie*, 194 W.Va. 657, 461 S.E.2d 163.

Mr. Horn also contends that the requisite element of malice was not proved. This Court previously has expressed that

"[m]ethods for proving malice cannot be definitely prescribed because it is a subjective attitude, *State v. Gunter*, 123 W. Va. 569, 17 S.E.2d 46 (1941); however, (malice) may be inferred from the intentional use of a deadly weapon, *State v. Brant*, W. Va., 252 S.E.2d 901 (1979)." *State v. Ferguson*, 270 S.E.2d 166, 170 (1980)[, *overruled on other grounds, State v. Kopa*, 173 W. Va. 43, 311 S.E.2d 412 (1983)].

*State v. Slonaker*, 167 W. Va. 97, 101, 280 S.E.2d 212, 215 (1981). *Accord* Syl. pt. 3, *State v. Miller*, 197 W.Va. 588, 476 S.E.2d 535 (1996) ("A jury may infer malice and intent to kill from the use of a deadly weapon in circumstances not affording the defendant excuse, provocation, or justification."). "A jury instruction about malice should be, that it is not essential that malice should have existed for any length of time before the killing, but it is sufficient if malice springs into the mind before the accused did the killing." Syl. pt. 2, *Slonaker*, 167 W. Va. 97, 280 S.E.2d 212.

8

Applying these principles to the present case, this Court determines that sufficient evidence existed to support the jury's conviction of Mr. Horn for first degree murder. At trial, the evidence showed that decedent was murdered by multiple stabbings, which leads to a permissible inference that his death was caused by intentional, malicious, and deliberate conduct. Further, after decedent was killed, Mr. Horn arrived shirtless at a nearby house. When Mr. Horn was taken into custody, his clothing was stained with blood that later was determined to be decedent's blood. While in a police cruiser, Mr. Horn told the officer that he was in decedent's house when an unknown person entered and knocked Mr. Horn unconscious. Mr. Horn surmised that this unknown person killed decedent. However, Mr. Horn had no explanation for the reason that he left decedent's home without calling the police or seeking medical assistance. Nor did he promulgate how decedent's blood was found on his clothes. Taking into account the manner of decedent's death, Mr. Horn's behavior that night, and the evidence found on Mr. Horn's clothes, a jury could determine that the circumstances were proved beyond a reasonable doubt. Thus, we find that the evidence, taken in the light most favorable to the prosecution, was sufficient to support the first degree murder conviction, and we will not disturb the jury's decision in this regard.

### B. W. Va. Code § 61-2-1 (1991) (Repl. Vol. 2010)

Next, Mr. Horn argues that W. Va. Code § 61-2-1[5] is unconstitutional as void for vagueness. In so asserting, he sets forth that the statute violates Article III, § 10 of the West Virginia Constitution[6] and the Fourteenth Amendment of the United States Constitution.[7] Conversely, the State opines that the statute is constitutional in that it puts a reasonable person on notice of the elements thereof. Moreover, the State asserts that Mr. Horn points to no specific language in the statute, cites to no authority for his claim of unconstitutional vagueness, and otherwise fails to discuss his claim.

In particular to the current case, wherein Mr. Horn asserts a statute has constitutional infirmities, we have explained that

> [i]n considering the constitutionality of a legislative enactment, courts must exercise due restraint, in recognition of the principle of the separation of powers in government among

---

[5]Mr. Horn also has asserted that W. Va. Code § 61-3-1 is unconstitutional. As occurred with the insufficiency of the evidence argument regarding the arson statute, Mr. Horn has failed to brief the issue. The argument in regard to the constitutionality of the arson statute was likewise abandoned because it was not briefed; therefore, it will not be addressed by this Court. *See State v. Lilly*, 194 W. Va. 595, 605 n.16, 461 S.E.2d 101, 111 n.16 (1995) ("casual mention of an issue in a brief is cursory treatment insufficient to preserve the issue on appeal").

[6]Art. III, sec. 10 of the West Virginia Constitution provides that "[n]o person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers." This provision is a corollary to the applicable provision of the Fourteenth Amendment of the United States Constitution.

[7]*See* note 6, *supra*.

the judicial, legislative and executive branches. Every reasonable construction must be resorted to by the courts in order to sustain constitutionality, and any reasonable doubt must be resolved in favor of the constitutionality of the legislative enactment in question. Courts are not concerned with questions relating to legislative policy. The general powers of the legislature, within constitutional limits, are almost plenary. In considering the constitutionality of an act of the legislature, the negation of legislative power must appear beyond reasonable doubt.

Syl. pt. 1, *State ex rel. Appalachian Power Co. v. Gainer*, 149 W. Va. 740, 143 S.E.2d 351 (1965). *Accord* Syl. pt. 3, *Willis v. O'Brien*, 151 W. Va. 628, 153 S.E.2d 178 (1967) ("When the constitutionality of a statute is questioned every reasonable construction of the statute must be resorted to by a court in order to sustain constitutionality, and any doubt must be resolved in favor of the constitutionality of the legislative enactment."). This Court also has observed that "[t]here is a presumption of constitutionality with regard to legislation." Syl. pt. 6, in part, *Gibson v. West Virginia Dep't of Hwys*, 185 W. Va. 214, 406 S.E.2d 440 (1991).

More pointed to the issue of constitutional vagueness, the law is settled that "'[a] criminal statute must be set out with sufficient definiteness to give a person of ordinary intelligence fair notice that his contemplated conduct is prohibited by statute and to provide adequate standards for adjudication.' Syllabus Point 1, *State v. Flinn*, 158 W. Va. 111, 208 S.E.2d 538 (1974)." Syl. pt. 1, *State v. Bull*, 204 W. Va. 255, 512 S.E.2d 177 (1998). *See also* Syl. pt. 1, *State ex rel. Myers v. Wood*, 154 W. Va. 431, 175 S.E.2d 637 (1970) ("There

11

is no satisfactory formula to decide if a statute is so vague as to violate the due process clauses of the State and Federal Constitutions. The basic requirements are that such a statute must be couched in such language so as to notify a potential offender of a criminal provision as to what he should avoid doing in order to ascertain if he has violated the offense provided and it may be couched in general language.").

It follows that the language of the statute must be clear so that an ordinary person has fair notice of what acts must be avoided. The applicable statute in the present case, W. Va. Code § 61-2-1, states:

> Murder by poison, lying in wait, imprisonment, starving, or by any willful, deliberate and premeditated killing, or in the commission of, or attempt to commit, arson, kidnapping, sexual assault, robbery, burglary, breaking and entering, escape from lawful custody, or a felony offense of manufacturing or delivering a controlled substance as defined in article four, chapter sixty-a of this code, is murder of the first degree. All other murder is murder of the second degree.
>
> In an indictment for murder and manslaughter, it shall not be necessary to set forth the manner in which, or the means by which, the death of the deceased was caused, but it shall be sufficient in every such indictment to charge that the defendant did feloniously, willfully, maliciously, deliberately and unlawfully slay, kill and murder the deceased.

In Syllabus point 5 of *State v. Sims*, 162 W. Va. 212, 248 S.E.2d 834 (1978), this Court explained: "W. Va. Code, 61-2-1, was not designed primarily to define the substantive elements of the particular types of first degree murder, but rather was enacted to categorize

12

the common law crimes of murder for the purpose of setting degrees of punishment." Previously, when we have had occasion to review this statute, we have reiterated that "W. Va. Code § 61-2-1 (1991) enumerates three broad categories of homicide constituting first degree murder: (1) murder by poison, lying in wait, imprisonment, starving; (2) by any wilful, deliberate and premeditated killing; and (3) in the commission of, or attempt to commit, *inter alia*, arson, sexual assault, robbery or burglary." Syl. pt. 6, *State v. Davis*, 205 W. Va. 569, 519 S.E.2d 852 (1999).

As a general rule of statutory interpretation, we have held that "questions of law and interpretations of statutes and rules are subject to a *de novo* review." Syl. pt. 1, in part, *State v. Duke*, 200 W. Va. 356, 489 S.E.2d 738 (1997). In our analysis of statutes, we have explained that the first step is to identify the intent expressed by the Legislature in promulgating the provision at issue. "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r,* 159 W. Va. 108, 219 S.E.2d 361 (1975). Then, we study the particular language used by the Legislature. "Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syl. pt. 2, *State v. Elder,* 152 W. Va. 571, 165 S.E.2d 108 (1968). *See also* Syl. pt. 5, *State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars,* 144 W. Va. 137, 107 S.E.2d 353 (1959) ("When a statute is clear and unambiguous and the legislative intent is plain, the

13

statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute."); Syl. pt. 2, *State v. Epperly,* 135 W. Va. 877, 65 S.E.2d 488 (1951) ("A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect.").

"In the absence of any definition of the intended meaning of words or terms used in a legislative enactment, they will, in the interpretation of the act, be given their common, ordinary and accepted meaning in the connection in which they are used." Syl. pt. 1, *Miners in Gen. Group v. Hix*, 123 W. Va. 637, 17 S.E.2d 810 (1941), *overruled on other grounds by Lee-Norse Co. v. Rutledge,* 170 W. Va. 162, 291 S.E.2d 477 (1982). Importantly,

> [i]t is the duty of a court to construe a statute according to its true intent, and give to it such construction as will uphold the law and further justice. It is as well the duty of a court to disregard a construction, though apparently warranted by the literal sense of the words in a statute, when such construction would lead to injustice and absurdity.

Syl. pt. 2, *Click v. Click*, 98 W. Va. 419, 127 S.E. 194 (1925).

Mr. Horn argues that the statute is unconstitutional for vagueness because it fails to delineate what conduct is prohibited. Specifically, Mr. Horn asserts that the "statute makes absolutely no reference or any attempt to describe what criminal conduct must be committed by a person in order to violate said statute." Mr. Horn has attacked the

14

constitutionality of W. Va. Code § 61-2-1 in a general manner, without discussion as to the particular prong of the statute that is applicable herein. However, the indictment is a part of the appendix record, and our review indicates that Mr. Horn was accused of "feloniously, unlawfully, maliciously, willfully, deliberately and premeditatedly, kill, slay and murder one Michael A. Rife, in violation of West Virginia Code 61-2-1, as amended, against the peace and dignity of the State." Thus, based upon our review of the criminal charges and a liberal construction of Mr. Horn's argument, we infer that his argument regarding the constitutionality of the statute is in regards to the category applicable to the facts of this case, *i.e.*, the second prong regarding murder "by any willful, deliberate and premeditated killing[.]"

Our analysis necessarily turns to the phrase at issue in this case: "willful, deliberate and premeditated killing[.]" To determine the sufficiency of this phrase, we need to affix meaning to the words contained therein. Encompassing all of the terms, it has been stated that

> a jury must consider the circumstances in which the killing occurred to determine whether it fits into the first degree category. Relevant factors include the relationship of the accused and the victim and its condition at the time of the homicide; whether plan or preparation existed either in terms of the type of weapon utilized or the place where the killing occurred; and the presence of a reason or motive to deliberately take life. No factor is controlling. Any one or all taken together may indicate actual reflection on the decision to kill. This is

15

what our statute means by "willful, deliberate and premeditated killing."

*Guthrie*, 194 W. Va. at 675 n.23, 461 S.E.2d at 181 n.23. The term "willful" has been used to characterize intentional conduct as distinguished from accidental or merely negligent conduct. *See State v. Pearis*, 35 W. Va. 320, 322, 13 S.E. 1006, 1007 (1891) (recognizing that general criminal intent is established by showing that defendant willfully and knowingly did the unlawful act). *See also* Syl. pt. 6, in part, *Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 ("[A] trial court should instruct the jury that murder in the first degree consists of an *intentional*, deliberate, and premeditated killing." (emphasis added)).

Having reiterated the intentional conduct required by the statute, we now turn to the definitions of deliberate and premeditated.

> The terms "deliberate" and "premeditated" have not often been defined in our cases but do carry a certain degree of definitional overlap. . . . To be guilty of this form of first degree murder the defendant must not only intend to kill but in addition he must premeditate the killing and deliberate about it. It is not easy to give a meaningful definition of the words "premeditate" and "deliberate" as they are used in connection with first degree murder. Perhaps the best that can be said of "deliberation" is that it requires a cool mind that is capable of reflection, and of "premeditation" that it requires that the one with the cool mind did in fact reflect, at least for a short period of time before his act of killing. . . . . The intention may be finally formed only as a conclusion of prior premeditation and deliberation.

*See State v. Hatfield*, 169 W. Va. 191, 200-01, 286 S.E.2d 402, 409 (1995) (footnotes and internal quotations and citations omitted). *Accord State v. Dodds*, 54 W. Va. 289, 297–98,

16

46 S.E. 228, 231 (1903) ("The next ingredient of the crime is that it must be deliberate. To deliberate is to reflect, with a view to make a choice. If a person reflects, though but for a moment before he acts, it is unquestionably a sufficient deliberation within the meaning of the statute. The last requisite is that the killing must be premeditated. To premeditate is to think of a matter before it is executed. The word, premeditated, would seem to imply something more than deliberate, and may mean that the party not only deliberated, but had formed in his mind the plan of destruction."). As a final note in regard to the statute's use of the word "killing," we observe that,

> [u]nder our decisions, the corpus delicti consists in cases of felonious homicide, of two fundamental facts: (1) the death; and (2) the existence of criminal agency as a cause thereof. The former must be proved either by direct testimony or by presumptive evidence of the strongest kind, but the latter may be established by circumstantial evidence or by presumptive reasoning upon the facts and circumstances of the case.

Syl. pt. 6, *State v. Beale*, 104 W. Va. 617, 141 S.E. 7 (1927).

A review of our State's legal precedents leads to the conclusion that the terms of murder under the second category have been defined sufficiently. Moreover, to the extent that Mr. Horn's argument can be interpreted as meaning that he was not on notice of the specific acts that are statutorily prohibited, we have recognized that the statute does not set forth proscribed acts. *See* Syl. pt. 5, *State v. Sims*, 162 W. Va. 212, 248 S.E.2d 834 (1978) ("W. Va. Code, 61-2-1, was not designed primarily to define the substantive elements of the

17

particular types of first degree murder, but rather was enacted to categorize the common law crimes of murder for the purpose of setting degrees of punishment."). The second category of murder under the statute sets forth the mental state of a defendant that must be proved by the State to attain a conviction. The statute is sufficiently definite to give a person of ordinary intelligence fair notice that his or her contemplated killing is prohibited by statute.

As a final comment, we point out that the constitutionality of W. Va. Code § 61-2-1 has been discussed on various occasions, but in regards to the third classification of murder in the statute. When afforded the opportunity, we expressly declared that the felony murder portion of the statute was constitutional. *See* Syl. pt. 3, *State ex rel. Peacher v. Sencindiver*, 160 W. Va. 314, 233 S.E.2d 425 (1977) ("W. Va. Code, 61–2–1 does not violate the due process clause of our federal and state constitutions. It requires the State to prove, in order to sustain a first degree murder conviction in a felony-murder case, that defendant committed or attempted to commit the named felony and that he committed murder incidental thereto.").

Taking into account the aforementioned, we now hold that the second category of first degree murder contained in W. Va. Code § 61-2-1 (1991) (Repl. Vol. 2010) as "[m]urder . . . by any willful, deliberate and premeditated killing" is not unconstitutionally

18

vague and does not violate the United States Constitution Amendment XIV, Section 1, or the West Virginia Constitution Article III, Section 10.

## C. Illegally Obtained Evidence

Mr. Horn sought to suppress certain evidence, specifically his statements and his clothing, by arguing that they were the product of an illegal arrest. Contrary to Mr. Horn's arguments, the State explains that the trial court acknowledged that the West Virginia officers may have been acting inadvertently as private citizens when they detained Mr. Horn. Importantly, as urged by the State, the West Virginia officers were acting under exigent circumstances and a good faith belief that they were situated continually in the State of West Virginia, and they immediately sought Virginia police involvement when they learned they were in Virginia.

While the facts are clear that police forces from two separate states were involved in this case and, further, that Mr. Horn was at least detained by the West Virginia police until the Virginia police could arrive and execute an arrest, a review of the transcript of the suppression hearing reveals that Mr. Horn's argument relates to the actions of the West Virginia police. To be clear, Mr. Horn also maintains that the arrest by the Virginia police was unlawful, but his reasoning is that the illegality stemmed from the fact that it occurred after the allegedly improper arrest by the West Virginia police while they were located within

19

the State of Virginia.  The State counters that the blood on Mr. Horn's ear gave the West Virginia officers probable cause (1) to believe that Mr. Horn was involved in decedent's murder and (2) to detain Mr. Horn so that they could preserve evidence prior to the arrival of the Virginia police.  The State additionally sets forth that any statements made by Mr. Horn were properly admissible.

The lower court held a hearing on June 6, 2011, and denied Mr. Horn's requests to suppress evidence.  Regarding the objects confiscated, the circuit court stated from the bench that the police officers

> seized all these items pursuant to what I consider to be a legal search warrant.  So as far as suppressing any of those items - - the boots, the pants, the waistline, the steering wheel and the ear blood, and the underwear, as far as search and seizure is concerned, I'm not going to suppress any of that.

The circuit court's ruling was based on its reasoning that the Virginia police, when summoned, legally arrested Mr. Horn and executed the appropriate search warrants.  In response to Mr. Horn's assertions regarding the allegedly illegal arrest, the circuit court suggested that the West Virginia police may properly be viewed as executing an arrest by a private citizen.

Moving on to consider Mr. Horn's statements, the circuit court found that the first statement about the blood on Mr. Horn's ear was admissible because it was during a

non-custodial conversation when the police were searching for information. A recorded statement was determined to be admissible based on the circuit court's decision that Mr. Horn was properly advised of his *Miranda* rights.[8]   Finally, statements made by Mr. Horn to West Virginia police during his transport from the State of Virginia to the State of West Virginia were found to be admissible on the basis that the officers read Mr. Horn his *Miranda* rights at the outset of the car trip.

Thus, the lower court determined that the physical evidence seized, as well as the verbal statements made by Mr. Horn, were all admissible. In our appellate review, we are guided as follows:

> When reviewing a ruling on a motion to suppress, an appellate court should construe all facts in the light most favorable to the State, as it was the prevailing party below. Because of the highly fact-specific nature of a motion to suppress, particular deference is given to the findings of the circuit court because it had the opportunity to observe the witnesses and to hear testimony on the issues. Therefore, the circuit court's factual findings are reviewed for clear error.

Syl. pt. 1, *State v. Lacy*, 196 W. Va. 104, 468 S.E.2d 719 (1996). Specifically regarding searches, we have explained that,

> [i]n contrast to a review of the circuit court's factual findings, the ultimate determination as to whether a search or seizure was reasonable under the Fourth Amendment to the

---

[8]*See Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

21

> United States Constitution and Section 6 of Article III of the West Virginia Constitution is a question of law that is reviewed *de novo*. Similarly, an appellate court reviews *de novo* whether a search warrant was too broad. Thus, a circuit court's denial of a motion to suppress evidence will be affirmed unless it is unsupported by substantial evidence, based on an erroneous interpretation of the law, or, based on the entire record, it is clear that a mistake has been made.

Syl. pt. 2, *id.* With particular applicability to the admission of a defendant's statements, we have stated that "[t]he action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion." Syl. pt. 1, *State v. Calloway*, 207 W. Va. 43, 528 S.E.2d 490 (1999).

While the parties herein use different terms to describe the conduct of the West Virginia police while in the State of Virginia, it is clear that the actions of the West Virginia police force are the beginning point of our analysis. Mr. Horn refers to the actions as an illegal arrest, while the State uses the term detainer. We note that "[a]n arrest is the detaining of the person of another by any act or speech that indicates an intention to take him into custody and that subjects him to the actual control and will of the person making the arrest." Syl. pt. 1, *State v. Muegge*, 178 W. Va. 439, 360 S.E.2d 216 (1987), *overruled on other grounds by State v. Honaker*, 193 W. Va. 51, 454 S.E.2d 96 (1994). Factually, Mr. Horn was hand-cuffed and placed in a police cruiser by the West Virginia officers, and his boots were seized to preserve evidence. These actions occurred about twenty feet over the state line, in

22

the State of Virginia, by West Virginia police officers. The West Virginia officers originally thought they were situated in the State of West Virginia; however, the property owner alerted them to the fact that they were in the State of Virginia. After detaining Mr. Horn, the West Virginia officers contacted the Virginia police who arrested Mr. Horn and got a warrant for his boots and other items.

Based on the facts, the circuit court did not suppress the evidence, theorizing that the officers had a good faith belief that they were located within the State of West Virginia, and, upon learning differently, the lower court reasoned that the officers executed a citizen's arrest to prevent the destruction of evidence until the Virginia authorities arrived and arrested Mr. Horn.

This Court has had previous occasion to address extra-territorial arrests by police officers. In Syllabus point 2 of *State ex rel. State v. Gustke*, 205 W. Va. 72, 516 S.E.2d 283 (1999), we held that "[a] law enforcement officer acting outside of his or her territorial jurisdiction has the same authority to arrest as does a private citizen and may make an extraterritorial arrest under those circumstances in which a private citizen would be authorized to make an arrest." In *Gustke*, a law enforcement officer witnessed the commission of a misdemeanor DUI, and we held that the officer's arrest of the defendant, outside of the officer's proper jurisdiction, was legal in that the officer was in the position

as a private citizen. *See* Syl. pt. 3, *Gustke*, *id*. ("Under the common law, a private citizen is authorized to arrest another who commits a misdemeanor in his or her presence when that misdemeanor constitutes a breach of the peace.").

Thus, *Gustke* answers the question whether a police officer can make an arrest outside of his or her jurisdiction, and specifically approves such an arrest in the case of a misdemeanor that occurred in the officer's presence. Turning to the case presently before this Court, however, we note two factual distinctions: the instant case involves a felony, and that felony was committed outside the presence of the police officers. *Gustke* holds that a police officer may make an arrest outside of his or her applicable jurisdiction as long as a private citizen could have effectuated such arrest. However, *Gustke* did not address whether a private citizen, and, by application, a police officer in an extraterritorial situation, may make an arrest in the case of a felony committed outside the presence of the citizen. We have addressed this specific issue in the realm of a police officer within his or her jurisdiction and held that "[t]he right to arrest in public without a warrant, based on probable cause that the person has or is about to commit a felony, is the general if not universal rule in this country." Syl. pt. 4, *State v. Howerton*, 174 W. Va. 801, 329 S.E.2d 874 (1985). However, as previously stated, an officer acting outside of his or her jurisdiction has the same arrest powers as a private citizen.

In that regard, this Court has stated, in *Allen v. Lopinsky,* 81 W. Va. 13, 94 S.E. 369 (1917), that " [a] private person cannot justify an arrest made without a warrant, by himself, or by an officer at his instance, for a misdemeanor or a felony, unless the felony has been actually committed." Moreover, we have been directed to look to the law of the forum of the arrest in determining whether a citizen's arrest was proper. *See Muegge*, 178 W.Va. 439, 442, 360 S.E.2d 216, 219, *overruled on other grounds* ("a peace officer who makes an arrest while in another jurisdiction does so as a private person, and may only act beyond his [or her] bailiwick to the extent that the law of the place of arrest authorizes such individuals to do so[.]" (citations omitted)). In this regard, it is conceded that the West Virginia police action that constituted an arrest occurred in Virginia. Relying on Virginia law, it has been found that a police officer "acting beyond his territorial jurisdiction . . . nonetheless retained power as a private citizen to make an arrest when . . . the felony had actually been committed and he had reasonable grounds for believing the person arrested had committed the crime." *Tharp v. Commonwealth,* 221 Va. 487, 270 S.E.2d 752 (1980). *Accord Hall v. Commonwealth,* 12 Va. App. 559, 389 S.E.2d 921 (1990). Based on the foregoing, we adopt the reasoning set forth in Virginia's case law, which is based on the common law, and comports with our decisions as to arrests by a private citizen. Thus, we hold that, under the common law, a private citizen is authorized to arrest another person who the private citizen believes has committed a felony. Further, we hold that a police officer acting beyond his territorial jurisdiction retains power as a private citizen to make an arrest when a felony

25

actually has been committed and the officer has reasonable grounds for believing the person

arrested has committed the crime.  Applying the foregoing to the present case, we find that

a private citizen could have effected a citizen's arrest of Mr. Horn in the State of Virginia.

It follows that an officer outside of his or her jurisdictional territory has the same rights as

a private citizen.  Thus, the arrest was lawful and did not provide a basis for the exclusion

of the physical evidence or the statements of Mr. Horn.[9]

---

[9]In his fourth and final argument, Mr. Horn rests on three reasons to support his allegation that the trial court erred in denial of his motion for a new trial.  First, he asserts that the State made improper remarks to the jury and the jury was improperly influenced by the same, Second, Mr. Horn argues that the State mentioned, in both its opening and closing statements, a previously-suppressed knife.  Third, he contends that there was an outside influence or an improper compromise verdict that influenced the jury.  Finding all of these issues to be without merit, we also point out that, "[a]lthough we liberally construe briefs in determining issues presented for review, issues which are not raised, and those mentioned only in passing but are not supported with pertinent authority, are not considered on appeal." *State v. LaRock*, 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (1996).  In his arguments, Mr. Horn sets forth the aforementioned grounds, but his arguments are cursory, unsupported by the facts and law, lack citation to the record, and contain no legal anaylsis.  Moreover, to the extent that the comments regarding the suppressed knife were error, we find it to be harmless error.  Therefore, the circuit court did not err in denying the motions for a new trial.

**IV.**

**CONCLUSION**

Based on the foregoing, the circuit court's order dated February 21, 2012, sentencing Mr. Horn following his jury convictions for the offenses of "Murder in the First Degree" and "Arson in the First Degree" is affirmed.

Affirmed.

27